**HOLTZMAN & MCCLAIN, PC**
A Professional Corporation
524 Maple Avenue, Suite 200
Linwood, NJ 08221
(609) 601-0900
Stephen D. Holtzman, Esquire (SDH 9921)
Jeffrey S. McClain, Esquire (JSM 0966)
Attorneys for Plaintiff GJJM ENTERPRISES, LLC d/b/a Stiletto

| | |
|---|---|
| GJJM ENTERPRISES, LLC, d/b/a Stiletto,<br>185 S. South Carolina Ave.<br>Atlantic City, NJ 08401,<br><br>              Plaintiff,<br><br>v.<br><br>CITY OF ATLANTIC CITY,<br>1301 Bacharach Blvd.<br>Atlantic City, NJ 08401,<br><br>CITY OF ATLANTIC CITY POLICE DEPARTMENT,<br>2715 Atlantic Ave.<br>Atlantic City, NJ 08401,<br><br>HENRY WHITE, Chief, Atlantic City Police Department, In His Official Capacity Only,<br>2715 Atlantic Ave.<br>Atlantic City, NJ 08401,<br><br>              Defendants. | **UNITED STATES DISTRICT COURT**<br>**District of New Jersey**<br><br>Case No.  17-cv-2492 (JHR) (AMD)<br><br>Civil Action |

---

**PLAINTIFF GJJM ENTERPRISES, LLC'S**
**BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

---

STEPHEN D. HOLTZMAN, ESQUIRE
(SDH 9921)
Holtzman & McClain, PC
524 Maple Ave., Suite 200
Linwood, NJ 08221
(609) 601-0900
Sholtzman2000@aol.com

JENNIFER M. KINSLEY, ESQUIRE
*Pro Hac Vice* Pending
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595
Kinsleylawofffice@gmail.com

DANIEL A. SILVER, ESQUIRE
*Pro Hac Vice* Pending
Silver & Silver
One Liberty Square
New Britain, Connecticut 06050
(860) 225-3518
dan@lawsilver.com

Counsel for Plaintiff GJJM Enterprises, LLC

**I.      INTRODUCTION**

At stake in this litigation is the constitutionally-protected right of free speech and, more specifically, the right of businesses to provide truthful, accurate, valuable, and important advertising to their customers.  By filing this motion, Plaintiff GJJM Enterprises, LLC, which does business under the trade name Stiletto, seeks a preliminary injunction prohibiting enforcement of a New Jersey state statute that prohibits restaurants without an alcoholic beverage license from identifying themselves as "BYOB."

Stiletto is one of Atlantic City's premier nightlife destinations.  Located adjacent to the Atlantic City boardwalk, the club features non-alcoholic beverages, upscale live entertainment, and frequently hosts tourists, convention groups, and bachelor parties.  Stiletto draws the vast majority of its customer base from Atlantic City resorts and hotels.  As a service to its customers, Stiletto permits its clientele to bring their own outside beer and wine to consume on the premises, but does not allow customers to bring in or consume liquor or mixed drinks.  *See* Affidavit of Phillip Griffo.  Nevertheless, because of fear of prosecution under a ban on "BYOB" advertising, Stiletto does not notify its clients – either through radio, print, television, and online ads or by exterior or interior signage – that they are permitted to bring their own alcoholic beverages to the club.

Section 2C:33-27 of the New Jersey Code governs the consumption of alcohol at restaurants that do not have a license to sell alcoholic beverages.  Under the statute, patrons may bring their own beer and wine to the restaurant, but may not bring outside liquor.  *See* N.J.S.A. 2C:33-27(a)(1).  The restaurant may not, however, advertise – either inside or outside the establishment – that patrons are permitted to bring their own alcoholic beverages.  *Id.* at (a)(2).  In other words, restaurants are prohibited from notifying customers that their establishments are

"BYOB," even though it is fully lawful for patrons to bring and consume their own alcoholic beverages on the premises. *Id*. Violations of the advertising ban are treated as criminal offenses. *See* N.J.S.A. 2C:33-27(c). Individuals who advertise that customers may "BYOB" to their restaurants face prosecution as disorderly persons. *Id*. In addition to the criminal penalties for that offense, courts may also prohibit individuals who violate the advertising ban from permitting the consumption of "BYOB" beverages at their restaurants. *Id*.

Because violations of N.J.S.A. 2C:33-27 involve businesses without an alcoholic beverage license and are treated as crimes, they are investigated and prosecuted by local law enforcement agencies rather than the New Jersey Division of Alcoholic Beverage Control. Thus, violations of N.J.S.A. 2C:33-27 in Atlantic City fall to the Atlantic City Police Department to detect and pursue.

For the reasons that follow, the "BYOB" advertising ban violates the First Amendment. The Court should accordingly issue a preliminary injunction prohibiting the enforcement of N.J.S.A. 2C:33-27(a)(2) by Atlantic City.

II. **THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION ENJOINING THE CITY OF ATLANTIC CITY AND ITS POLICE DEPARTMENT FROM ENFORCING N.J.S.A. 2C:33-27(A)(2).**

In order to obtain a preliminary injunction, the moving party must demonstrate two requisite factors: 1) that it has a reasonable probability of eventual success in the litigation, and 2) that it will be irreparably injured in the absence of an injunction. In addition, a court may take into account two additional criteria, where relevant: 3) the possibility of harm to other interested persons from the grant or denial of the injunction, and 4) the public interest. *See In Re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982). GJJM can satisfy each of these factors and is accordingly entitled to a preliminary injunction.

### A. GJJM Has a Reasonable Probability of Prevailing on the Merits of its First Amendment Claim.[1]

#### 1. N.J.S.A. 2C:33-27 imposes an unlawful content-based restriction on speech about alcoholic beverages and is therefore presumptively unconstitutional.

Content-based restrictions on speech are presumptively unconstitutional, a point the Supreme Court recently reaffirmed in *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015). *See also R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992). In *Reed*, the Supreme Court struck down a sign ordinance which included various exceptions and variable standards depending on whether the sign was political, elections-oriented, or bore some other non-commercial message. The Court found that the ordinance was content-based and subject to strict scrutiny. The Court cited a commercial case - *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653 (2011) - for the principle that heightened scrutiny was required when content-based discriminations are found in a law.

The majority opinion in *Reed* noted that there had been some "slippage" in First Amendment cases over the years, whereby the lower courts have upheld laws unless the content-based distinctions directly reflect an intent to regulate based on issue or speaker. The lower courts have also tended to uphold laws affecting speech where the government offered a content-neutral reason for choosing a particular category for regulation. Thus, categorical exceptions were not treated as content-based laws unless they appeared to be targeted at a particular message. The circuit court in *Reed* had taken just that approach:

> As the court explained, "Gilbert did not adopt its regulation of speech because it disagreed with the message conveyed" and its "interests in regulat[ing] temporary signs are unrelated to the content of the sign." *Ibid*. Accordingly, the court believed that the Code was "content-neutral as that term [has been] defined by the

---

[1] By restricting the basis for this motion to the First Amendment, GJJM does not intend to abandon the state constitutional claim alleged in its Complaint. Rather, GJJM restricts its argument to the First Amendment because this claim in and of itself provides a sufficient basis to grant relief.

> Supreme Court." *Id*. at 1071. In light of that determination, it applied a lower level of scrutiny to the Sign Code and concluded that the law did not violate the First Amendment. *Id*. at 1073–1076.

*Reed*, 135 S.Ct. at 2226.

The Supreme Court rejected this approach, adopting instead a more formalistic analysis. Under the post-*Reed* regime, a law will be declared content-based if it adopts categories, exclusions, or exclusions defined in terms of what is said:

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. *E.g., Sorrell v. IMS Health, Inc.*, 564 U.S. ___, ___, 131 S.Ct. 2653, 2663–2664, 180 L.Ed.2d 544 (2011); *Carey v. Brown*, 447 U.S. 455, 462, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Mosley*, *supra,* at 95, 92 S.Ct. 2286. This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. *Sorrell*, *supra,* at __, 131 S.Ct., at 2664. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Reed*, 135 S.Ct. at 2227.

In addition to laws which explicitly regulate in terms of what is said, the Court also held that laws which are content-neutral on their face will be treated as content-based if their justification relies on distinctions between the message or the messenger:

> Our precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be "'justified without reference to the content of the regulated speech,' "or that were adopted by the government "because of disagreement with the message [the speech] conveys," *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)*.* Those laws, like those that are content based on their face, must also satisfy strict scrutiny.[2]

---

[2] In the wake of *Reed*, the Supreme Court vacated and remanded similar decisions from three other circuits (the First, Fourth, and Sixth) on the basis that the courts improperly declined to impose strict scrutiny when analyzing the constitutionality of various sign ordinances. *See Thayer v. City of Worcester*, 135 S.Ct. 2887 (2015) (reversing and remanding *Thayer v. City of Worcester*, 755 F.3d 60 (1st Cir. 2014), on basis of *Reed*); *Central Radio Co., Inc. v. City of*

4

*Reed*, 135 S.Ct. at 2227.

In applying *Reed*, the lower federal courts have faithfully applied strict scrutiny, noting that laws which create distinctions based on categories of speech are likely invalid. *See, e.g., Norton v. City of Springfield, Ill.*, 806 F.3d 411, 412-13 (7th Cir. 2015) (invalidating content-based panhandling restriction by applying strict scrutiny under *Reed*); *Browne v. City of Grand Junction*, 136 F.Supp.3d 1276 (D. Colo. 2015) (same); *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015) (invalidating state statute prohibiting unsolicited marketing and politically related calls as content- based and unconstitutional under the First Amendment); *Gresham v. Rutledge*, 2016 WL 4027901 (E.D. Ark. 2016) (same); *Thomas v. Schroer*, 2015 WL 5231911 (W.D. Tenn. Sept. 8, 2015). Notably, these cases do not limit *Reed*'s application to sign ordinances, but apply strict scrutiny to a whole host of speech-related restrictions, regardless of the manner of delivery of the speech in question. *See, e.g., Norton*, 806 F.3d at 412. In fact, at least one federal court has explicitly held that regulation of sexually-oriented speech is content-based and therefore subject to strict scrutiny under *Reed*. *See Free Speech Coalition, Inc. v. Atty. Gen. of the United States*, 825 F.3d 149, 160-64 (3d Cir. 2016). Thus, *Reed* requires strict scrutiny in any instance where a government regulation singles out speech for disparate treatment based upon its content or message.[3]

---

*Norfolk, Virginia*, 135 S.Ct. 2893 (2015) (reversing and remanding *Central Radio Co., Inc. v. City of Norfolk*, 776 F.3d 229 (4th Cir. 2015)); *Wagner v. City of Garfield Heights, Ohio*, 135 S.Ct. 2888 (2015) (reversing *Wagner v. City of Garfield Heights*, 577 Fed.Appx. 488 (6th Cir. 2014), in light of *Reed*).

[3] In addition, legal scholars have also emphasized the impact of *Reed*, characterizing it as "sea change" in First Amendment jurisprudence and noting that *Reed*'s "redefinition of content discrimination…revolutionize[d]" free speech doctrine). *See* Anthony Lauriello, *Panhandling Regulation After* Reed v. Town of Gilbert, 116 Colum. L. Rev. 1105, 1105 (May 2016); Urja

N.J.S.A. 2C:33-27(a)(2) restricts restaurant advertising on the basis of its content. Left unregulated by the statute are a whole host of advertising messages conveyed by restaurants, including their menus, locations, hours of operation, and unique features or services. Notably, the statute also permits restaurants with liquor permits to advertise about drink specials and to provide other information about pricing and availability of alcohol. The only type of information restaurants cannot provide to customers is that they are permitted to bring their own beer and wine for on-site consumption. As such, the statute targets and bans "BYOB" advertising based solely on the message it conveys. It is therefore presumptively unconstitutional and must be analyzed under strict scrutiny. *See Reed*, 135 S.Ct. at 2226-7.

Applying strict scrutiny, there is no compelling governmental interest for permitting restaurants to advertise on-site alcohol sales while banning "BYOB" advertising. Assuming *arguendo* that the government has an interest in reducing the consumption of alcohol - which likely does not rise to the level of a compelling constitutional interest even if it exists - the "BYOB" advertising ban produces the opposite result. Customers who purchase alcohol at a restaurant have a virtually unlimited supply of beverages and beverage choices, and restaurants are permitted to advertise this opportunity to the public. On the other hand, customers who bring their own beverages by necessity have a reduced supply and reduced range of alcohol to consume. Thus, the "BYOB" advertising ban is not narrowly tailored to a compelling interest and does not survive strict scrutiny.

### 2.  N.J.S.A. 2C:33-27 violates the right of commercial speech.

The First Amendment unequivocally protects the right of businesses and individuals to disseminate speech related to commercial transactions. *See, e.g., In Re R.M.J.*, 455 U.S. 191,

---

Mittal, *The "Supreme Board of Sign Review":* Reed *and Its Aftermath*, 125 Yale L.J.F. 359, 359 (2016).

199 (1982); *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 495-6 (1996) (describing history and importance of advertising in United States). "By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information." *Pacific Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 8 (1986). Indeed, "[i]t is a matter of public interest that [commercial] decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 764-5 (1976).

The Supreme Court has adopted a four-part test for determining when restrictions on commercial speech violate this protection. First, the court must determine whether the speech in question concerns lawful activity and is not misleading. Second, the court asks whether the government interest is substantial. If so, the third inquiry is whether the regulation directly advances the government interest asserted and, fourth, whether the regulation is more extensive than necessary to serve the government's interest. *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*, 447 U.S. 557, 566 (1980). The burden rests with the government to justify its restrictions on commercial speech. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). In addition, "a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 626 (1995) (citing *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995)).

Just days before the filing of this motion, the Supreme Court reaffirmed that businesses have a protected commercial speech right to inform their customers about the economic and financial aspects of consumer transactions. *See Expressions Hair Design v. Schneiderman*, 2017

WL 1155913 (Mar. 29, 2017).[4] In addition, in recent months, the federal courts have strengthened the right of commercial speech to invalidate restrictions on doctor/patient conversation related to firearm safety and on skim milk product labeling. *See Wollschlaeger v. Gov. of Fl.*, 2017 WL 632740 (11th Cir. Feb. 16, 2017); *Ocheesee Creamery, LLC v. Putnam*, 2017 WL 1046104 (11th Cir. March 20, 2017). Moreover, applying similar First Amendment scrutiny, this Court has previously enjoined restrictions of prerecorded telephone advertisements, recognizing a strong right by businesses to provide truthful, nonmisleading information about their products and services to prospective customers. *See Lysaght v. State of New Jersey*, 837 F.Supp. 646 (D. N.J. 1993).

Specifically with respect to the advertisement of alcoholic beverages, the Supreme Court has squarely determined that the Twenty-First Amendment, which vests power in the states to set policy around the sale of alcoholic beverages, does not override or in any way limit the First Amendment's protection of commercial speech involving alcohol. *See 44 Liquormart*, 517 U.S. at 490, 515-6; *see also Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) (invalidating federal law abridging a brewer's right to provide the public with accurate information about the alcoholic content of malt beverages on First Amendment grounds). Moreover, the Third Circuit has previously recognized that restrictions on alcoholic beverage advertising trigger the protected right of commercial speech and must satisfy the four-part *Central Hudson* test to survive First Amendment scrutiny. *See The Pitt News v. Pappert*, 379 F.3d 96 (2004). In an opinion authored by now-Supreme Court Justice Samuel Alito, the Third Circuit invalidated a Pennsylvania state law that prohibited university-affiliated newspapers from accepting payment for alcoholic beverage advertisements. *Id*. at 101. First, the court recognized that advertisements about lawful

---

[4] Given the recent release of this decision, page citations are not available as of the filing of this motion.

products, including alcoholic beverages, are protected by the First Amendment. *Id*. at 105-6. Then, the court observed that, because a large percentage of the individuals who attend or are employed by institutions of higher learning are adults, the advertising ban was not sufficiently tailored to the goal of reducing underage drinking. *Id*. at 107. The court accordingly invalidated the law and permanently enjoined its enforcement. *Id*. at 103.

Applying the *Central Hudson* factors to N.J.S.A. 2C:33-27(a)(2), it is clear that the ban on "BYOB" advertising violates the right of commercial speech. At the outset, the proposed "BYOB" advertisements Stiletto desires to provide its cusomters are clearly constitutionally protected. The ads concern a lawful business practice (*see* N.J.S.A. 2C:33-27(a)) and contain truthful, nonmisleading information about the option for customers to bring beer and wine to the café. As such, the information that is provided to passengers about GJJM's business is protected by the First Amendment. *See The Pitt News*, 379 F.3d at 105-6.

Secondly, the government maintains no substantial interest in prohibiting the exchange of this information between GJJM and its prospective customers. The only ostensible justification for precluding "BYOB" advertising is the reduction in consumption of alcoholic beverages, an interest that also exists with respect to advertising about alcohol sales as well. The government bears the burden of justifying its restriction on commercial speech by demonstrating a substantial interest. *Edenfield*, 507 U.S. at 770. Without a legislative record or current evidence to demonstrate that banning "BYOB" advertising produces measurable declines in alcohol abuse or that "BYOB" alcohol consumption is even a societal problem, the government has no interest to advance. *See, e.g., Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 626 (1995) (citing *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995)) ("a governmental body seeking to sustain a

9

restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree").

In addition, even if the government's interest were substantial, restricting "BYOB" advertising does not directly advance the government's desire to reduce alcohol abuse. Indeed, there is a distinction between the *conduct* the government wishes to alleviate and *speech* that is unrelated to that conduct. The mere fact that GJJM may include the term "BYOB" on its website does not automatically mean that customers will in fact bring their own alcoholic beverages to the café or even consume them if they do bring them. In fact, alerting potential customers to the fact that other individuals may be consuming "BYOB" alcohol on site may actually deter alcohol consumption by informing those patrons who wish to avoid alcohol altogether that alcohol may be present on site. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 764-5 (1976). As such, the government's restriction of speech is not directly connected to its desire to prevent conduct.

Lastly, N.J.S.A. 2C:33-27(a)(2) is woefully underinclusive and is therefore not narrowly drawn to the government's purported interest. The statute bans only advertising about "BYOB" beverages and not alcohol sales as a whole. Thus, those restaurants who retain a liquor license are permitted to advertise at will about the price, availability, and quality of their alcoholic beverage selection – thereby increasing the likelihood of alcohol abuse – while only "BYOB" advertising is suppressed. The "BYOB" advertising ban therefore does very little to reduce alcohol abuse, given that advertisements about alcohol sales by others are readily available and unregulated by the government.

Given the application of the *Central Hudson* factors to N.J.S.A. 2C:33-27(a)(2), the prohibition on "BYOB" advertising by restaurants violates the First Amendment. GJJM therefore has a reasonable likelihood of success on the merits of its First Amendment claim.

### B. GJJM Will Be Irreparably Harmed Absent an Injunction.

As the Supreme Court has clearly stated, the loss of First Amendment freedoms, even if for a fleeting moment, constitutes irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable harm"). However, when seeking an injunction on the basis of alleged First Amendment deprivations, litigants in this circuit must also show that the ordinance or government action in question exerts a chilling effect on speech in the form of government suppression of expression. *Hohe v. Casey*, 868 F.3d 69, 72-3 (3d Cir. 1989).

N.J.S.A. 2C:33-27(a)(2), clearly exerts such a chill on constitutionally-protected commercial speech. GJJM has refrained from notifying its customers and potential customers that "BYOB" beverages are permitted for fear of being prosecuted and of losing the ability to offer "BYOB" opportunities. This fear is valid, given that the State of New Jersey has applied this provision to other clubs in the past. *See Borough of Sayreville v. 35 Club, LLC*, 2009 WL 8705858 (N.J. Super. Sept. 17, 2010) (reversed on other grounds by *Borough of Sayreville v. 35 Club, LLC*, 416 N.J.Super. 315 (N.J. Super. 2010)). As this Court has held, the threat of enforcement of an ordinance that on its face applies to and punishes speech creates irreparable harm. *See McCormack v. Township of Clinton*, 872 F.Supp. 1320, 1327 (D. N.J. 1994) (holding that threat of criminal enforcement against political yard signs satisfied irreparable harm standard sufficient to justify issuance of a preliminary injunction). Moreover, the threat of enforcement exacts a heightened chilling effect here, because the statute specifically authorizes prohibiting

"BYOB" consumption as a penalty for violations of the advertising ban, meaning that GJJM could permanently forego the opportunity to offer "BYOB" consumption to its customers if it engages in its desired advertising. As such, GJJM will be irreparably harmed absent the issuance of an injunction.

> **C.** **Other Persons, Namely Prospective Customers, Will Be Harmed Absent an Injunction.**

Although the Court is not specifically required to take the interests of third parties into account at this stage of the litigation, the interests of GJJM's customers are certainly relevant here. As an initial matter, GJJM's patrons have an equally protected First Amendment right to receive information about businesses and services in Atlantic City. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-7 (1976). Thus, GJJM's customers wishing to bring and consume their own alcoholic beverages at the café have a vested interest in receiving information in advance about that opportunity. Moreover, "BYOB" advertising serves the even broader goal of informing those customers who wish to avoid alcohol altogether that beer and wine will be consumed on the premises, allowing those who wish to restrict their entertainment to non-alcohol establishments to avoid patronizing GJJM. As such, if the Court does not issue an injunction, the customer's right to obtain truthful advertising and to make informed choices in the marketplace will be equally violated. As such, the interests of third parties clearly weigh in favor of issuing a preliminary injunction.

> **D.** **The Public Interest Weighs in Favor of an Injunction.**

Although not binding on this Court, the Sixth Circuit has noted that preservation of constitutional rights is always in the public interest. *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). Similarly, the Third Circuit has noted that when there are no societal benefits justifying the suppression of First Amendment rights, the public

interest is in favor of granting an injunction. *Tenafly Eruv Assoc., Inc. v. Borough of Tenafly*, 309 F.3d 144, 177 (3d Cir. 2002).

Here, there is no societal interest justifying the suppression of "BYOB" advertising, particularly when the underlying activity of consuming alcoholic beverages in restaurants is fully lawful. Moreover, the Supreme Court has repeatedly observed that there is a societal benefit to the dissemination of truthful commercial advertising of the type GJJM desires to present. *See, e.g., 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 495-6 (1996) (describing history and importance of advertising in United States); *Pacific Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 8 (1986) ("By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information."); *Virginia Bd. of Pharmacy*, 425 U.S. at 765 ("It is a matter of public interest that [commercial] decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable.").

Given the strength of the First Amendment right at stake here, the public interest strongly supports the issuance of a preliminary injunction.

## III.   CONCLUSION

To protect and preserve the First Amendment right of free expression and to ensure that GJJM's constitutional right to present truthful and accurate commercial speech to the public is not irreparably violated, the Court should issue a preliminary injunction enjoining the City of Atlantic City from enforcing N.J.S.A. 2C:33-27(a)(2)'s advertising ban against GJJM.

Respectfully submitted,

 /s/ Stephen Holtzman (SDH 9921)
STEPHEN HOLTZMAN, ESQUIRE
Holtzman & McClain, PC
524 Maple Ave., Suite 200
Linwood, NJ 08221
(609) 601-0900

JENNIFER M. KINSLEY, ESQUIRE
*Pro Hac Vice* Pending
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595
Kinsleylawofffice@gmail.com

DANIEL A. SILVER, ESQUIRE
*Pro Hac Vice* Pending
Silver & Silver
One Liberty Square
New Britain, Connecticut 06050
(860) 225-3518
dan@lawsilver.com

Counsel for Plaintiff GJJM Enterprises, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that an exact copy of the foregoing brief was provided to all counsel of record via the Court's electronic filing (CM/ECF) system, as well as by regular U.S. mail, postage prepaid, to the City of Atlantic City Solicitor's Office, Atlantic City Hall, 1301 Bacharach Blvd. #406, Atlantic City, NJ 08401 on the 13th day of April, 2017.

 /s/ Stephen D. Holtzman (SDH 9921)
STEPHEN D. HOLTZMAN, ESQUIRE