|  |  |  |
|---|---|---|
| GJJM ENTERPRISES, LLC d/b/a STILETTO, 185 SOUTH CAROLINA AVE, ATLANTIC CITY, NJ 08401 | : |  |
|  | : |  |
|  | : |  |
| Plaintiff, | : |  |
| v. | : |  |
|  | : |  |
| CITY OF ATLANTIC CITY, 1301 BACHARACH BLVD, ATLANTIC CITY, NJ 08401 | : | Civil Action No. 17-2492 (JHR) (AMD) |
|  | : |  |
|  | : |  |
| CITY OF ATLANTIC CITY POLICE DEPARTMENT, 2715 ATLANTIC AVE, ATLANTIC CITY, NJ 08401 | : |  |
|  | : |  |
| HENRY WHITE, CHIEF, ATLANTIC CITY POLICE DEPARTMENT, IN HIS OFFICIAL CAPACITY ONLY, 2715 ATLANTIC AVE. ATLANTIC CITY, NJ 08401 | : |  |
|  | : |  |
| Defendants. | : |  |

## BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND CROSS-MOTION TO DISMISS UNDER *F.R.C.P.* **12(B)(6)**

Steven S. Glickman, Esq. (Of Counsel)

Victor A. Afanador, Esq.
(Of Counsel & On the Brief)

Jonathan M. Carrillo, Esq. (On the Brief)
Andrew L. Smith, Esq. (On the Brief)

**LITE DEPALMA GREENBERG, LLC**
570 Broad Street – Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
*Attorneys for Defendants*

660093.1

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ i

PRELIMINARY STATEMENT ...................................................................................... 1

SUMMARY OF THE ALLEGATIONS .......................................................................... 3

I.  PLAINTIFF'S COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY,
AND WITH PREJUDICE, AGAINST ALL DEFENDANTS ........................................ 4

    A.  PLAINTIFF'S COMPLAINT FAILS TO PLEAD WITH LEGAL
SUFFICIENCY A VALID CAUSE OF ACTION AND SHOULD BE
DISMISSED ............................................................................................. 4

    B.  THE COMPLAINT MUST BE DISMISSED AS TO THE CITY OF
ATLANTIC CITY ..................................................................................... 5

    C.  THE COMPLAINT MUST BE DISMISSED AS TO THE CITY OF
ATLANTIC CITY POLICE DEPARTMENT ......................................... 8

    D.  THE COMPLAINT MUST BE DISMISSED AS TO CHIEF OF POLICE ............
HENRY WHITE ........................................................................................ 9

    E.  *N.J.S.A.* 2C:33-27(a)(1) IS CONSTITUTIONAL AND SATISFIES THE
DICTATES OF *CENTRAL HUDSON GAS & ELECTRIC CORPORATION V.
PUBLIC SERVICE COMMISSION*, 447 U.S. 557 (1980) ................................... 12

        1.  *N.J.S.A. 2C:33-27(a)(1) DIRECTLY ADVANCES THE
GOVERNMENTAL INTEREST ASSERTED HEREIN* ................................ 13

        2.  *N.J.S.A. 2C:33-27(a)(1) IS NARROWLY TAILORED AND IS NOT
MORE EXTENSIVE THAN NECESSARY TO SERVE THE STATE'S
COMPELLING INTEREST* ........................................................................ 17

    F.  PLAINTIFF HAS NOT PROPERLY PLED A VIOLATION OF ITS NEW
JERSEY CONSTITUTIONAL RIGHTS AND HAS NO VIABLE CLAIM
UNDER THE NEW JERSEY CONSTITUTION FOR THE SAME REASON
PLAINTIFF'S CLAIM FAILS UNDER 42 U.S.C. § 1983 ................................. 18

II.  THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION ................................................................................................................ 19

    A.  PLAINTIFF CANNOT MEET THE HIGH STANDARD FOR INJUNCTIVE
RELIEF ..................................................................................................... 19

    B.  PLAINTIFF CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE
MERITS ..................................................................................................... 20

     C.    PLAINTIFF CANNOT DEMONSTRATE A THREAT OF IMMINENT, IRREPARABLE HARM ......................................................................................22

          1.    AN INJUNCTION WILL NOT ISSUE WHERE, AS HERE, THE MOVANT HAS AVAILABLE TO IT AN ADEQUATE REMEDY AT LAW – MONEY DAMAGES ....................................................................24

     D.    THE REMAINING FACTORS WEIGH HEAVILY IN DEFENDANTS' FAVOR AND AGAINST THE IMPOSITION OF AN INJUNCTION IN THIS CASE, AND IS THUS NOT IN THE PUBLIC INTEREST ......................25

CONCLUSION...............................................................................................................27

660093.1

# TABLE OF AUTHORITIES

*A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*,
   372 F.3d 572 (3d Cir.2004)..............................................................................................10

*Acierno v. New Castle Cnty.*,
   40 F.3d 645 (3d Cir. 1994).........................................................................................20, 23

*Adams v. Freedom Forge*,
   204 F.3d 475 (3d Cir. 2000)..............................................................................................25

*AMSAT Cable Limited v. Cable Vision of Connecticut*,
   6 F.3d 867 (2d Cir. 1993) ..................................................................................................18

*American Future Systems, Inc. v. Pennsylvania State University*,
   510 F. Supp. 983 (M.D. Pa. 1981).....................................................................................23

*Argueta v. United States Immigration and Customs Enforcement*,
   643 F.3d 60 (3d Cir. 2011)................................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 ...............................................................................................................*Passim*

*Bayer v. Monroe County Children and Youth Servs.*,
   577 F.3d 186 n. 5 (3d Cir. 2009).......................................................................................11

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................................4

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986)............................................................................................................9

*Bethesda Lutheran Homes and Services, Inc. v. Leean*,
   154 F.3d 716 (7th Cir.1998) ..........................................................................................7, 8

*Bockes v. Fields*,
   999 F.2d 788 (4th Cir. 1993) .............................................................................................7

*Board of Trustees of State Univ. of N.Y. v. Fox*,
   492 U.S. 469 (1989)....................................................................................................12, 17

*Brandon v. Holt*,
   469 U.S. 464 (1985)............................................................................................................9

*Burson v. Freeman*
   504 U.S. 191 (1992)..........................................................................................................14

*CTIA–The Wireless Assoc. v. City of Berkeley, Cal.*,
  139 F.Supp.3d 1048 (N.D. Cal. 2015) ...................................................................21

*Cal. Outdoor Equity Partners v. City of Corona*,
  No. CV 15-03172, 2015 WL 4163346 (N.D. Cal. July 9, 2015) ............................21

*Campbell Soup Co. v. ConAgra, Inc.*,
  977 F.2d 86 (3d Cir. 1992) ....................................................................................24

*Capital Broadcasting Co. v. Mitchell*,
  333 F.Supp. 582 (D.D.C.1971) ..............................................................................14

*Central California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*,
  445 U.S. 97 (1980) ................................................................................................15

*Central Hudson Gas & Electric Corporation v. Public Service Commission*,
  447 U.S. 557 (1980) ........................................................................................*Passim*

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir.1985) ..............................................................................22, 23

*City of Newport, Kentucky v. Iacobucci*,
  479 U.S. 92 (1986) ................................................................................................15

*Citizens for Free Speech, LLC v. Cty. of Alameda*,
  114 F.Supp.3d 952 (N.D. Cal. 2015) ....................................................................22

*Club 35, L.L.C. v. Borough of Sayreville*,
  420 N.J. Super. 231 (App. Div. 2011) ....................................................................6

*Coady v. Leonard*,
  132 Ohio St. 329 (1937) ........................................................................................14

*Columbia Broadcasting System, Inc. v. Democratic Nat'l Comm.*,
  412 U.S. 94 (1973) ................................................................................................16

*Commonwealth v. Anheuser-Busch, Inc.*,
  181 Va 568 (1943) ................................................................................................14

*Conchatta, Inc. v. Evanko*,
  83 F. App'x 437 (3d Cir. 2003) ....................................................................19, 23, 24

*DeBellis v. Kulp*,
  166 F.Supp.2d 255 (E.D.Pa.2001) ..........................................................................9

ii

*Doby v. DeCrescenzo*,
   171 F.3d 858 (3d Cir. 1999)...................................................................................8

*Dodds v. Richardson*,
   614 F.3d 1185, 1198 (10th Cir.2010), cert. denied, ⸺ U.S. ⸺ 131 S.Ct. 2150 (2011).......10

*Dunagin v. City of Oxford*,
   718 F.2d 738 (5th Cir.1983) ...........................................................................14, 17

*ECRI v. McGraw-Hill, Inc.*,
   809 F.2d 223 (3d Cir. 1987)...........................................................................19, 24

*Edenfield v. Fane*,
   507 U.S. 761 (1993)...............................................................................................14

*Elrod v. Burns*,
   427 U.S. 347 (1976)...............................................................................................23

*Familias Unidas v. Briscoe*,
   619 F.2d 391 (5th Cir. 1980) ..................................................................................7

*FMC Corp. v. Control Solutions, Inc.*,
   369 F.Supp.2d 539 (E.D.Pa.2005) ........................................................................25

*Florida Bar v. Went For It, Inc.*,
   115 S.Ct. 2371 (1995)............................................................................................12

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)....................................................................................5

*Free Speech Coal., Inc. v. Attorney Gen. United States*,
   825 F.3d 149 (3d Cir. 2016)..................................................................................21

*Gucci Amer., Inc. v. Daffy's, Inc.*,
   2000 WL 1720738 (D.N.J. Nov. 14, 2000) ..........................................................20

*Hohe v. Casey*,
   868 F.2d 69 (3d Cir. 1989)....................................................................................25

*Ky. v. Graham*,
   473 U.S. 159 (1985)................................................................................................9

*Levison v. David*,
   151 A. 388 (N.J. Eq. 1930)...................................................................................23

iii

*Losch v. Borough of Parkesburg*,
   736 F.2d 903 (3d Cir. 1984)............................................................................................6

*Maryland v. King*,
   133 S.Ct. 1 (2012)............................................................................................26

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997)............................................................................................19

*Monell v. Department of Social Servs. of City of New York*,
   436 U.S. 658 (1978)............................................................................................1, 5

*North Dakota v. United States*,
   495 U.S. 423 (1990)............................................................................................15

*NutraSweet Co. v. Vit-Mar Enters., Inc.*,
   176 F.3d 151 (3d Cir. 1999)............................................................................................2, 19

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447 (1978)............................................................................................12

*Oklahoma Telecasters Association v. Crisp*,
   699 F.2d 490 (10th Cir. 1983) ............................................................................................17

*Padilla v. Twp. of Cherry Hill*,
   110 F. App'x 272 (3d Cir. 2004)............................................................................................9

*Pittsburgh Press Co. v. Human Relations Comm'n*,
   413 U.S. 376 (1973)............................................................................................12

*Princess Sea Indus., Inc. v. State of Nevada*,
   635 P.2d 281 (Nev.1981)............................................................................................14

*Punnett v. Carter*,
   621 F.2d 578 (3d Cir. 1980)............................................................................................20, 23

*Queensgate Inv. Co. v. Liquor Control Commission*,
   459 U.S. 807 (1982)............................................................................................17

*Reed v. Town of Gilbert*,
   135 S. Ct. 2218 (2015)............................................................................................21, 22

*Reedy v. Borough of Collingswood*,
   204 Fed.Appx. 110 (3d Cir. 2006)............................................................................................19

iv

*Republican Party of Pennsylvania v. Cortés*,
 No. CV 16-05524, 2016 WL 6525409 (E.D. Pa. Nov. 3, 2016)..................................................24

*Rodriguez v. City of Camden*,
 No. 09-CV-1909 (NLH) (KM, 2010 WL 186248 (D.N.J. Jan. 13, 2010) ..............................9, 11

*Sampson v. Murray*,
 415 U.S. 61 (1974).......................................................................................................................25

*Santiago v. Warminster Twp.*,
 629 F.3d 121 n. 5 (3d Cir.2010)...............................................................................................10, 11

*Sturm v. Clark*,
 835 F.2d 1009 (3d. Cir. 1987)......................................................................................................4

*Thorpe v. Little*,
 CIV. 11-411-SLR, 2011 WL 3630123 (D. Del. Aug. 18, 2011) ...............................................10

*United States v. Edge Broadcasting*,
 509 U.S. 418 ...........................................................................................................................14, 17

*United States v. Price*,
 688 F.2d 204 (3d Cir. 1982).........................................................................................................20

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*,
 425 U.S. 748 (1976).....................................................................................................................12

*Vives v. City of N.Y.*,
 524 F.3d 346 (2d Cir. 2008)...........................................................................................................7

*Florida Bar v. Went For It, Inc.*,
 115 S.Ct. 2371 (1995)...............................................................................................12, 13, 14, 16

*Whitesel v. Sengenberger*,
 222 F.3d 861 (10th Cir. 2000) .......................................................................................................7

*Williams v. Lackawanna County Prison*,
 Civ. No. 07–1137, 2010 WL 1491132 (M.D.Pa. Apr. 13, 2010) ...........................................9, 11

## **Statutes**

42 U.S.C. §1983..................................................................................................................1, 5, 6

42 U.S.C. 1988.........................................................................................................................4

Fed. R. Civ. Pro. 12(b)(6) ...................................................................................................1, 4, 5

660093.1

*N.J.S.A.* 2A:170-25.21-25.23 ................................................................................................22

*N.J.S.A.* 2C: 33-27............................................................................................................*Passim*

*N.J.S.A.* 2C:33-27(a)(1) ....................................................................................................*Passim*

*N.J.S.A.* 2C:33–27a(1)–(3) ........................................................................................................9

*N.J.S.A.* 2C:33-28(a)(1) ....................................................................................................17, 18

*N.J.S.A.* 2C:33–27b ...................................................................................................................9

*N.J.S.A.* 10:6-2 .........................................................................................................................18

*N.J.S.A.* 40A:14-118 .................................................................................................................8

## PRELIMINARY STATEMENT

The Plaintiff GJJM Enterprises, LLC, d/b/a Stiletto ("Plaintiff") has improperly sued the City of Atlantic City (the "City"), the Police Department of the City of Atlantic City ("Police Department") and Police Chief Henry White ("Chief White")(collectively "Defendants") in a lawsuit challenging the constitutionality of an unenforced state law that regulates the advertising of bring your own beverage ("BYOB") establishments. The Defendants herein simultaneously seek to have the Complaint dismissed with prejudice and also oppose Plaintiff's motions for a preliminary injunction.

Pursuant to Fed. R. Civ. Pro. 12(b)(6) ("*F.R.C.P.* 12(b)(6)") the Complaint should be dismissed by way of cross-motion in its entirety because: (1) Plaintiff has no valid cause of action upon which relief can be granted as to the Defendants; and (2) the Complaint violates the *Iqbal* and *Twombly* requirements since it fails to plead the causes of action with particularity and without sweeping legal conclusions. The Defendants should be procedurally dismissed with prejudice from this lawsuit as a matter of law. First, the Plaintiff has no claim or valid cause of action against the City because the underlying statute, *N.J.S.A.* 2C:33-27(a)(1), was not enacted, modified, or ever enforced by the City. Moreover, there is no possible way to maintain a cause of action against the City since the Complaint fails to identify a municipal policy, practice or custom to establish liability under *Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 692 (1978)* and 42 U.S.C. §1983 nor is there a valid basis or mechanism for relief under the New Jersey State Constitution. Thus, the pleading is deficient and could never be corrected since there is no policy that could exist for the enforcement of a state law that has never been enforced by the City.

1

Second, the Police Department is not a validly pled party since it is a City subdivision and not a separate public entity.  Third, Chief White is sued only in his official capacity, which is a duplicative claim against the City and should be dismissed.  In addition, the Complaint fails to allege with particularity any single non-conclusory fact or action by Chief White that serves as a basis for a constitutional violation.  This is an obvious infraction as to the requirements of *Twombly* and *Iqbal* and mandates a dismissal of the Complaint against Chief White.

Furthermore, should the Court entertain the merits of Plaintiff's motion for a preliminary injunction, the application should be denied.  Plaintiff cannot be awarded the extraordinary remedy of a preliminary injunction because: (1) Plaintiff cannot succeed on the merits; (2) there is no clear threat of imminent, irreparable harm; (3) the balancing of hardships weighs in Defendants' favor; and (4) Plaintiff has failed to show that the relief sought is in the public interest.  *See NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

In this case, the underlying state statue satisfies the test outlined in *Central Hudson Gas & Electric Corporation v. Public Service Commission*, 447 U.S. 557 (1980).   At the inception, the Court is reminded that commercial speech is provided limited First Amendment protections especially when a particular state statute seeks to regulate advertising for all statewide BYOB establishments extending beyond the borders of the City.  Here, *N.J.S.A.* 2C:33-27(a)(1) enjoys intermediate scrutiny under the *Central Hudson* framework, which highlights why the Plaintiff cannot satisfy all of the elements necessary to be awarded a preliminary injunction.

The Defendants herein seek to undress Plaintiff's meritless First Amendment argument.  Plaintiff seeks to be awarded a preliminary injunction against the City for a state advertising law that applies to all restaurants beyond the borders of Atlantic City.  The Complaint fails to allege any actions by the Defendants against Plaintiff or any actions by the Plaintiff to advertise its

2

BYOB establishment.   Instead, Plaintiff attempts to lure the Court into finding the law unconstitutional and award a preliminary injunction under the false guise of a First Amendment violation.   Just because Plaintiff operates an exotic dancing establishment does not entitle it to the conclusion of a First Amendment violation and the awarding of a preliminary injunction. The Court should dismiss this case and deny the motion for a preliminary injunction since there is no valid cause of action against any of the named parties procedurally and no valid cause of action as a matter of law.

## SUMMARY OF THE ALLEGATIONS

Plaintiff owns and operates a nightclub, Stiletto, located at 185 South Carolina Avenue, Atlantic City, New Jersey. (Plaintiff's Complaint ¶ 5).  Plaintiff alleges that although its customers are permitted to bring and consume their own beer and wine within the premises consistent with the New Jersey BYOB statute (*N.J.S.A.* 2C: 33-27), Stiletto does not have the right to advertise that it is BYOB as a result of the aforementioned state statute.  (*Id.* at ¶¶ 5 and 11.)

Plaintiff alleges that the Defendants deprived its constitutional rights under the First Amendment to the United States Constitution and the New Jersey Constitution. (*Id.* at ¶ 16.).  Namely, the Plaintiff contends that because the state BYOB statute could potentially be enforced, the Defendants have created a chilling effect on the Plaintiff's constitutionally-protected right to commercial speech. (*Id.* at ¶ 16.).

Additionally, Plaintiff has filed a contemporaneous motion for preliminary injunction pursuant to Fed. R. Civ. P. 65, seeking to prohibit the Defendants from enforcing N.J.S.A. 2C:33-27(a)(1). (*See* Plaintiff's Motion for Preliminary Injunction, P. 1).  Among other claims, the Plaintiff argues that it has sustained irreparable injury, and that it would likely prevail on the

merits of the above causes of action, specifically with regard to the Plaintiff's alleged federal and state constitutional violations, respectively. (*Id.* at P. 2 and 3).

Therefore, the Plaintiff seeks: (1) a declaration that the advertising restriction contained within *N.J.S.A.* 2C: 33-27 violates the First Amendment to the United States Constitution and Article I, Section 6 of the New Jersey Constitution; (2) preliminary injunctive relief; (3) monetary damages to compensate Plaintiff for the potential chilling effect of *N.J.S.A.* 2C: 33-27; and, an award of Plaintiff's reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.  (Plaintiff's Complaint, Count 2, ¶¶ 1-4)

## I.     PLAINTIFF'S COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY, AND WITH PREJUDICE, AGAINST ALL DEFENDANTS.

### A.  PLAINTIFF'S COMPLAINT FAILS TO PLEAD WITH LEGAL SUFFICIENCY A VALID CAUSE OF ACTION AND SHOULD BE DISMISSED.

Plaintiff's Complaint should be dismissed pursuant to *F.R.C.P.* 12(b)(6) because all of the Counts in Plaintiff's Complaint fail to state a claim for which relief can be granted.  The purpose of a *F.R.C.P.* 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *See Sturm v. Clark*, 835 F.2d 1009, 1011 (3d. Cir. 1987).  "While Rule 8 does not require detailed factual allegations, it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *See Iqbal*, 556 U.S. at 677.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . ." *Iqbal*, 556 U.S. at 678.

4

Consequently, the Third Circuit has applied *Iqbal* by requiring a district court to conduct a two-part analysis when considering a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Under the first prong of the analysis, the factual and legal elements of a claim must be separated. The complaint's well-pleaded facts must be accepted as true but all legal conclusions should be disregarded. *Id.* The second prong of the analysis requires that a court determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* (citations omitted). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to the relief sought. *Id.* Under *Iqbal* and *Fowler*, Plaintiff is required to articulate facts showing that Plaintiff is entitled to relief.

In this case, this Court should dismiss Plaintiff's Complaint pursuant to *F.R.C.P.* 12(b)(6) for failure to state a cause of action because as discussed *infra* (1) Plaintiff's has failed to state a claim upon which relief can be granted against the City, the Police Department, and Chief White; (2) it is utterly implausible that *N.J.S.A.* 2C:33-27 is unconstitutional; and (3) Plaintiff has failed to adequately plead a violation of its New Jersey constitutional rights. As such, Plaintiff's Complaint falls far short of satisfying the federal pleading standard and as such should be dismissed in its entirety.

### B. THE COMPLAINT MUST BE DISMISSED AS TO THE CITY OF ATLANTIC CITY.

This Court should dismiss the Complaint against the City, as the City cannot be held liable for any constitutional violation stemming from the (hypothetical) enforcement of *N.J.S.A.* 2C:33-27. Plaintiff's 42 U.S.C. §1983 claims against the City must fail because Plaintiff has not adequately pled that the City has adopted a policy or custom that caused Plaintiff's alleged injuries. In *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 692 (1978)

the United States Supreme Court held that in a 42 U.S.C. §1983 action a municipal defendant cannot be liable under a theory of respondeat superior.  Municipal liability can be imposed under 42 U.S.C. §1983 only "when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" of which the plaintiff complains.  *Id*. at 694.  The United States Supreme Court defined a policy as a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at 635.  The Supreme Court also defined "custom or usage" as practices of state officials that are "so permanent and well settled as to constitute 'custom or usage' with the force of law."  *Id*. at 691.  A plaintiff must identify the challenged policy, attribute it to the municipality itself, and show a causal link between execution of the policy and the injury suffered.  *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).  The instant statute, *N.J.S.A.* 2C:33-27(a)(1), which prohibits state-wide BYOB advertising, was not enacted, modified, or ever enforced by the City.   This is a state statute that serves to protect the public-at-large, not just the citizens, tourists, and business invitees of the City of Atlantic City.

It is undisputed that *N.J.S.A.* 2C:33-27 is a state law enacted by the New Jersey State Legislature.  "The Legislature has regulated BYOB as it deems appropriate in *N.J.S.A.* 2C:33–27a(1)–(3), and *N.J.S.A.* 2C:33–27b reserves nothing more than a municipal right to prohibit BYOB . . . *N.J.S.A.* 2C:33–27b does not reserve a municipality's right to regulate BYOB, any ordinance that does so is preempted because that right is excluded from the Legislature's grant of municipal authority." *Club 35, L.L.C. v. Borough of Sayreville*, 420 N.J. Super. 231, 240–41 (App. Div. 2011).  Thus, the City possesses no authority to regulate BYOB advertising, and at most, can choose to enforce the statute.  However, the City has not done so.  Therefore,

6

Plaintiff's Complaint fails to allege any facts that would give rise to a cause of action against the City. Other than the conclusory allegation contained in ¶20 of Plaintiff's Complaint, Plaintiff fails to articulate any other allegation related to the City. Plaintiff fails to even allege within the Complaint that the City has ever attempted to enforce the instant statute.

Defendants submit that the mere threat of enforcement of *N.J.S.A.* 2C:33-27, by itself, is insufficient to support liability against the City. Here, the City has not adopted a specific policy in the area at issue, but simply has the potential to enforce this state law. Thus, this makes it impossible for the City to be liable for any alleged constitutional violation. Courts have held that when a municipality, like a county or city, is merely enforcing state law, without adopting any particular policy of its own, it cannot be held liable under the *Monell* line of cases. See, e.g., *Vives v. City of N.Y.*, 524 F.3d 346, 351–52 (2d Cir. 2008) (holding that a municipality cannot be liable under *Monell* if it merely carries out a state law without any "meaningful" or "conscious" choice, because the municipality does not act pursuant to its own policy in that case); *Bockes v. Fields*, 999 F.2d 788, 791 (4th Cir. 1993) (holding that a county board did not act in a policy-making capacity when it fired plaintiff because termination procedures and criteria were prescribed by the state although the state procedures allowed the county board some discretion); *Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (stating that it was not clear whether the policies of a state entity authorized certain actions but emphasizing that the [municipal entity] cannot be liable for merely implementing a policy created by the state [entity]"); *Bethesda Lutheran Homes and Services, Inc. v. Leean, 154 F.3d 716, 718 (7th Cir.1998)* (holding that a municipality "cannot be held liable under section 1983 for acts that it did under the command of state or federal law")); *Familias Unidas v. Briscoe, 619 F.2d 391, 404 (5th Cir. 1980)* (holding the county not liable for implementing a facially unconstitutional state

statute because the action was "more fairly ... characterized as the effectuation of the policy of the State"); and *Doby v. DeCrescenzo*, 171 F.3d 858, 868 (3d Cir. 1999) (stating "whether the defendants' method of processing petitions truly can be considered a county, rather than a state, policy because when a county is merely enforcing state law, without adopting any particular policy of its own, it cannot be held liable under the Monell line of cases.")

Here, the City has not adopted any policy of its own, nor has the City incorporated *N.J.S.A.* 2C:33-27 into its municipal code or adopted a more restrictive version of this statute. Therefore, it is not the City's policy that has caused the constitutional injury alleged in Plaintiff's Complaint. Rather, it is the state statute that lies at the heart of Plaintiff's allegations. Moreover, Plaintiff's Complaint is utterly devoid of any allegation that the City officially sanctioned or ordered a practice of enforcing *N.J.S.A.* 2C:33-27(a)(1). Accordingly, nothing in the Complaint even remotely suggests the existence of a 'custom' the caused the alleged injury. All Plaintiff can establish, which Defendants do not dispute, is that *N.J.S.A.* 2C:33-27 is a state statute that the City could *theoretically* enforce and has not enforced. That, alone, does not provide a sufficient basis for a finding of liability under *Monell*. Here, it is the policy contained in the state law, rather than anything devised or adopted by the City, that could be responsible for any injury. *See Bethesda Lutheran*, 154 F.3d at 718.

In short, Plaintiff cannot show any basis for a finding of liability against the City under *Monell*, as the City never enforced the instant statute, nor fostered or created it. Therefore, Plaintiff's claim must be dismissed against all Defendants, as a matter of law.

### C. THE COMPLAINT MUST BE DISMISSED AS TO THE CITY OF ATLANTIC CITY POLICE DEPARTMENT.

Plaintiff's claim against the Police Department should also be dismissed because police departments are city subdivisions, not separate entities. Plaintiff's claims against the Police

Department are duplicative.  Police departments are "an executive and enforcement function of municipal government." *See N.J.S.A.* 40A:14-118.  As the Court held in *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004): "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." citing *DeBellis v. Kulp,* 166 F.Supp.2d 255, 264 (E.D.Pa.2001).  Accordingly, Plaintiff's claims against the Police Department must be dismissed.

### D. THE COMPLAINT MUST BE DISMISSED AS TO CHIEF OF POLICE HENRY WHITE.

The claims against Chief White in his official capacity should be dismissed as duplicative of the claims against the City and the claims fail to allege any facts to substantiate a valid cause of action.  An "[individual]-capacity suit seeks to impose personal liability upon a government official for actions he takes under color of state law." *Ky. v. Graham*, 473 U.S. 159, 165-67 (1985).  On the contrary, an official capacity claim is generally another way of stating an action against the entity.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 544 (1986).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985)).  A redundant official capacity claim against an individual, where the employing entity is also a party should be dismissed.  *See Rodriguez v. City of Camden*, No. 09-CV-1909 (NLH) (KM, 2010 WL 186248, at *4 (D.N.J. Jan. 13, 2010).  Here, Plaintiff has brought claims against the Chief in his official capacity only and identical claims against the City.  (See ¶ 6-8 of Plaintiff's Complaint).  The City is already a named Defendant; therefore, the inclusion of an official capacity claim against the Chief is duplicative.  Thus, the claim against the Chief must be dismissed.

9

In fact, Plaintiff cannot maintain a valid 42 U.S.C. § 1983 cause of action as plead against Chief White because Plaintiff has not made a single non-conclusory factual assertion that a specific action by Chief White led to the alleged constitutional deprivation. In *Iqbal*, the Supreme Court stressed that "[i]n a § 1983 suit—here masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S.at 677.  Hence, "when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Thorpe v. Little*, CIV. 11-411-SLR, 2011 WL 3630123 (D. Del. Aug. 18, 2011) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir.2010), cert. denied, ⸺ U.S. ⸺ 131 S.Ct. 2150 (2011) (internal quotations omitted).  The factors necessary to establish a 42 U.S.C. § 1983 violation for the individual defendants will vary with the constitutional provision at issue. *Id.*

Pre-*Iqbal* Third Circuit precedent provided two theories of supervisory liability.  The first of these was where supervisors may be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n. 5 (3d Cir.2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.2004)).  The other theory for supervisory liability is if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Id.*  "Particularly after *Iqbal*, the connection between the supervisor's directions and the

constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Id.* at 130.

The Third Circuit acknowledges that *Iqbal* might require a narrowing of the scope of liability.  *See Santiago*, 629 F.3d at 130 n. 8; *see also, Argueta v. United States Immigration and Customs Enforcemen*t, 643 F.3d 60 (3d Cir. 2011) (noting that the Circuit has "refrained from answering the question of whether *Iqbal* eliminated—or at least narrowed the scope of— supervisory liability because it was ultimately unnecessary" to dispose of the matter before that Court); *Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n. 5 (3d Cir. 2009) (stating that since *Iqbal*, proof of personal knowledge, with nothing more, may be insufficient to impose liability upon a supervisory official).  Hence, for a supervisory theory of liability, personal involvement by an individually named defendant remains the benchmark for establishing liability for the violation of a plaintiff's constitutional right. *See Williams v. Lackawanna County Prison*, Civ. No. 07–1137, 2010 WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

Plaintiff's Complaint lacks any specific factual allegation sufficient to sustain a 42 U.S.C. § 1983 cause of action against Chief White.  Allegations of participation or actual knowledge and acquiescence must be made with factual particularity, which does not exist in this complaint.  *See Rodriguez v. City of Camden*, No. 09-CV-1909 (NLH) (KM, 2010 WL 186248, at *4 (D.N.J. Jan. 13, 2010).  The Complaint is devoid of any specific factual averments demonstrating that Chief White had knowledge of, let alone approved, any alleged misconduct.  As such, Chief White should be dismissed from the Complaint pursuant to *Iqbal*.

E. *N.J.S.A.* **2C:33-27(a)(1) IS CONSTITUTIONAL AND SATISFIES THE DICTATES OF** *CENTRAL HUDSON GAS & ELECTRIC CORPORATION V. PUBLIC SERVICE COMMISSION***, 447 U.S. 557 (1980).**

N.J.S.A. 2C:33-27(a)(1)'s prohibition on BYOB advertising is a permissible restriction on pure commercial speech. Whether commercial speech is entitled to First Amendment protection in the face of state action is determined by application of a four-part test formulated by the Supreme Court in *Central Hudson Gas & Elec. v. Public Serv. Comm'n.*, 447 U.S. 557 (1980). Here, the Government satisfies the requirements of *Central Hudson Gas & Electric Corporation v. Public Service Commission*, 447 U.S. 557 (1980). At issue, in this matter, is a purely hypothetical restriction placed on the Plaintiff's ability to engage in BYOB advertising of its business, a form of pure commercial speech, "which does 'no more than propose a commercial transaction.' " *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762 (1976) (quoting *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 385 (1973)). As the Supreme Court has mandated, such " '[c]ommercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values,' and is subject to 'modes of regulation that might be impossible in the realm of noncommercial expression.' " *Florida Bar v. Went For It, Inc.*, 115 S.Ct. 2371, 2375 (1995) (quoting *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989), quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978)); see also *Edge*, 113 S.Ct. at 2703. Here, the instant statute is subject to " 'intermediate' scrutiny ... under the framework set forth in *Central Hudson*." *Went For It*, 115 S.Ct. at 2375-76 (citation omitted).

Pursuant to the *Central Hudson* test, the Court first inquires whether the commercial speech at issue concerns a lawful activity and is not misleading; if not, it is without First Amendment protection. *Central Hudson*, 447 U.S. at 566. The remainder of the test allows the government to regulate even non-misleading commercial speech concerning a lawful activity

where: (ii) it asserts a substantial interest in regulating the speech; (iii) the regulation directly advances the governmental interest asserted; and, (iv) the regulation is not more extensive than necessary to serve that interest. *Id.* at 566.   The Court in *Went For It* clarified the pertinent portions of the *Central Hudson* test as follows:

> Commercial speech that falls into neither of those categories [speech that concerns unlawful activity or is misleading], may be regulated if the government satisfies a test consisting of three related prongs: first, the government must assert a substantial interest in support of its regulation; second, the government must demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, the regulation must be " 'narrowly drawn.' '"

*Went For It*, 115 S.Ct. at 2376 (quoting *Central Hudson*, 447 U.S. at 564-65).

As this standard applies to the instant matter, it is irrefutable that the state has a substantial interest in combatting and promoting temperance.   Moreover, it is clear that this state legislation is governed by the aforementioned constitutional standard (satisfying both prongs one and two of *Central Hudson*).[1]   Therefore, the constitutionality of *N.J.S.A.* 2C:33-27(a)(1) will depend upon an analysis, as follows, of the third and fourth prongs of *Central Hudson*, respectively, in which the state meets the threshold on both.

### 1. *N.J.S.A.* 2C:33-27(a)(1) DIRECTLY ADVANCES THE GOVERNMENTAL INTEREST ASSERTED HEREIN.

*N.J.S.A.* 2C:33-27(a)(1) advances the governmental interest asserted herein, namely its steadfast, and inextinguishable, requirement to promote temperance state-wide.   The state has an absolute duty to protect and safeguard the public-at-large, and the legislative underpinnings of this *body politic*, along with the above statute, should remain undisturbed.

To show that this statute advances the governmental interest asserted herein, the government must show that "the harms it recites are real and that its restriction will in fact

---

[1] *N.J.S.A.* 2C:33-27 does not impose a content-based restriction on speech.   Accordingly, the standard of review for the instant statute is the four prong inquiry as set forth in *Central Hudson*.

alleviate them to a material degree." *Edenfield v. Fane,* 507 U.S. 761, 770-71 (1993).  Although

the government must offer more than "mere speculation or conjecture," *id.* at 770, its third prong

burden may be met by the submission of studies, surveys and even anecdotal evidence indicating

that the regulation will advance the articulated governmental interest.  *Went For It*, 515 U.S. at

626.  Additionally, commercial speech restrictions may be justified by reference to, or

incorporation of, "history, consensus and 'simple common sense.' " *Id.* at 628, *quoting Burson v.

Freeman,* 504 U.S. 191, 211 (1992).  "Unlike rational basis review, the *Central Hudson* standard

does not permit [a court] to supplant the precise interests put forward by the State with other

suppositions." *Edenfield*, 113 S.Ct. 1792, 1798.  The substantial interest asserted by the public

agency in support of the legislation, herein, is temperance and the accompanying need to regulate

alcohol advertising.  The advertising of BYOB has far-reaching ramifications that are commonly

known and are within the Court's judicial notice.  The sale of alcohol is a highly regulated

activity, along with its advertising, and these activities could be banned entirely by the *body

politic*.[2]

---

[2] Insofar as temperance is a compelling governmental interest, regulating alcohol advertising is equally crucial, and necessary to the state, in order to promote the safety, morals, and well-being of the public at-large.  The cases below involve challenges to laws regulating the advertising of alcohol, in which the courts have upheld the subject laws as permissible exercises of police power.  In the exercise of its police power, the *body politic* has broad, unfettered discretion in the enactment of laws to restrict alcohol.  See *Coady v. Leonard*, 132 Ohio St. 329 (1937) (regulation adopted by the Liquor Control Board of the state prohibiting all outside signage of retail establishments was held constitutional); *Commonwealth v. Anheuser-Busch, Inc.*, 181 Va 568 (1943) (holding that a regulation adopted by the Alcoholic Beverage Control Board restricting unlicensed dealers from advertising intoxicating liquors but not prohibiting licensed dealers from advertising was constitutional).  Furthermore, the United States Supreme Court has upheld restrictions on advertising in related socially-harmful activities.  See *Edge Broadcasting* (1993) (lotteries) (*supra*); *Capital Broadcasting Co. v. Mitchell*, 333 F.Supp. 582 (D.D.C.1971) (broadcast cigarette advertising); *Dunagin v. City of Oxford*, 718 F.2d 738 (5th Cir.1983) (liquor advertising); *Princess Sea Indus., Inc. v. State of Nevada*, 635 P.2d 281 (Nev.1981) (brothel advertising).  Moreover, the *body politic* has determined that reasonable restriction on advertisement lessens the demand for that particular product.  See *Central Hudson*, 447 U.S. at

According to the National Highway Traffic Safety Administration, two in three people will be involved in a drunk driving crash in their lifetime. *Substance Abuse and Mental Health Services Administration, Results from the 2013 National Survey on Drug Use and Health: Summary of National Findings. Rockville, MD: Substance Abuse and Mental Health Services Administration, 2014.* http://www.samhsa.gov/data/sites/default/files/NSDUHresultsPDFWHTML2013/Web/NSDUHresults2013.pdf. In 2013 alone, 28.7 million people admitted to driving under the influence of alcohol. *National Highway Traffic Safety Administration. "The Economic and Societal Impact Of Motor Vehicle Crashes, 2010,"* May 2014, http://www-nrd.nhtsa.dot.gov/Pubs/812013.pdf. It is indisputable that alcohol is also a factor, in large part, to other deaths, involving various types of crime, suicide, and other fatal (non-intentional) accidents.

As such, the state has been afforded broad discretion over commerce and advertising, as it pertains to alcohol. See *North Dakota v. United States*, 495 U.S. 423, 433 (1990) (plurality opinion) ("Given the special protection afforded to state liquor control policies by the Twenty-first Amendment, they are supported by a strong presumption of validity and should not be set aside lightly."); *id.* at 431 ("within the area of its jurisdiction, the State has 'virtually complete control' over the importation and sale of liquor and the structure of the liquor distribution system") (citing *Central California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980)). Therefore, the *body politic*, herein, has a substantial interest in protecting the public-at-large and in promoting temperance. *N.J.S.A.* 2C:33-27(a)(1) only serves to advance

---

569. In short, the Twenty-first Amendment affords the states broad deference in regulating speech that promotes socially-harmful conduct. *City of Newport, Kentucky v. Iacobucci*, 479 U.S. 92 (1986).

the governmental interest asserted herein, namely its steadfast, and inextinguishable, requirement to promote temperance state-wide, while fostering safety and welfare.[3]

Furthermore, "[t]he judgment of the Legislative Branch cannot be ignored or undervalued simply because [plaintiff] casts its claims under the umbrella of the First Amendment." *Columbia Broadcasting System, Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 103 (1973). The Supreme Court has ruled that only in the complete absence of any (causal) correlation between the purported governmental interest and the at-stake legislation, would the legislation be deemed unconstitutional under *Central Hudson*. Otherwise, the courts are bound to defer to legislative decision-making. *Went For It*, 115 S.Ct. at 2377. More importantly, the state properly exerted its policing function, here, in establishing the instant statute. See *Club 35, LLC v. Borough of Sayreville*, 420 N.J. Super. 231 (App. Div. 2011) (a municipal ordinance prohibiting BYOB in all or some unlicensed premises may be enforced against owners and operators who allow BYOB where it is prohibited and against the patrons who participate). The government reserves the right to police alcohol as one of its cardinal functions, and it simultaneously has the ability to ban BYOB outright.

Lastly, it is widely accepted that in the exercise of its police power, a state is entitled to enact provisions, like the instant one, to protect public health and safety. To the extent that alcohol has been deemed dangerous to the overall public welfare, a state may prohibit or regulate the advertising of BYOB and liquor in a constitutional manner. Similar to the scenarios presented in *Central Hudson*, and in the instant matter, respectively, courts have upheld advertising restrictions. These decisions, among many others, have been cited favorably by the

---

[3] In addition to these obvious motivations in promoting temperance, *vis-à-vis* through limiting the advertisement of alcohol, all of which have been long-standing historical concerns of the government, the state legislature is afforded broad deference in its decision-making ability, and, respectfully, this should not be disturbed by judicial second-guessing.

16

United States Supreme Court and the Circuit Courts. *See e.g. Oklahoma Telecasters Association v. Crisp*, 699 F.2d 490, 501 (10th Cir. 1983) (upholding a restriction on the advertising of alcohol to reduce the sale and consumption of same); *Dunagin v. City of Oxford*, 718 F.2d 738, 750 (5th Cir. 1983) (holding that there was a causal connection between advertising and consumption of alcohol); and, *Queensgate Inv. Co. v. Liquor Control Commission*, 459 U.S. 807 (1982) (ruling that the advertising of competitive drink prices would encourage excessive drinking).

In short, the decision-making power of the government, given the causal relationship between *N.J.S.A.* 2C:33-27 and the aforementioned health and safety prerogatives, should remain undisturbed and should be afforded deference by this Court.

**2.  *N.J.S.A.* 2C:33-27(a)(1) IS NARROWLY TAILORED AND IS NOT MORE EXTENSIVE THAN NECESSARY TO SERVE THE STATE'S COMPELLING INTEREST.**

*N.J.S.A.* 2C:33-28(a)(1) is narrowly tailored, and is thus not violative of *Central Hudson's* fourth prong.  The First Amendment demands "a fit that is not necessarily perfect, but reasonable, that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served … Within those bounds we leave it to governmental decision makers to judge what manner of regulation may best be employed." *Board of Trustees, State University of New York v. Fox*, 492 U.S. 469, 480 (1989). A statute fails under *Central Hudson* only if it "burdens substantially more speech than necessary." *United States v. Edge Broadcasting*, 509 U.S. 418, 430.

Applying the fourth element of *Central Hudson* to the instant matter, this *body politic* did not implement, foster, or enforce a ban on speech; moreover, the speech, herein, was not burdened substantially more than necessary.  Rather, the governmental interest of promoting temperance and promoting the social welfare was carefully balanced and articulated within

660093.1

*N.J.S.A.* 2C:33-28(a)(1).  Indeed, the government has broad deference in its legislative decision-making.

Second, *N.J.S.A.* 2C:33-28(a)(1) is not more extensive than necessary to serve the aforementioned governmental interest.  In fact, the state could have banned BYOB outright in all of its attendant commercial establishments.  By way of comparison, *N.J.S.A.* 2C:33-27(a)(1) is much more narrowly tailored.  Again, the government's interest is to promote safety and the well-being of its citizenry.  It is not to ban alcohol, and its accompanying advertisement, outright.  *N.J.S.A.* 2C:33-27(a)(1) promotes a well-balanced legislative and policing mechanism for curbing alcohol abuses in BYOB establishments.

Lastly, it is worth mentioning that the Plaintiff's insistence upon its hypothetical and pecuniary business losses, if any, is a "red herring."  Among other things, Plaintiff has claimed that it has lost potential (and hypothetical) business due to *N.J.S.A.* 2C:33-27(a)(1).  However, it is irrefutable that the First Amendment does not assess this type of economic impact; rather, it only assesses any "chilling effect," if any, upon freedom of speech.  *AMSAT Cable Limited v. Cable Vision of Connecticut*, 6 F.3d 867, 871 (2d Cir. 1993).  In short, *N.J.S.A.* 2C:33-27(a)(1) is narrowly tailored, and is thus not violative of the *Central Hudson* fourth prong inquiry.

### F.  PLAINTIFF HAS NOT PROPERLY PLED A VIOLATION OF ITS NEW JERSEY CONSTITUTIONAL RIGHTS AND HAS NO VIABLE CLAIM UNDER THE NEW JERSEY CONSTITUTION FOR THE SAME REASON PLAINTIFF'S CLAIM FAILS UNDER 42 U.S.C. § 1983.

Plaintiff's claim under the New Jersey State Constitution must also fail for the reasons cited *supra*.  Plaintiff's New Jersey State constitution claim is duplicative of Plaintiff's federal claims.  Therefore, where any of the federal claims alleged herein by the Plaintiff are subject to

18

dismissal under 42 U.S.C. § 1983, then all such analogue causes of action or claims brought under the New Jersey Constitution must be dismissed as well.

### II. THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.

#### A.  PLAINTIFF CANNOT MEET THE HIGH STANDARD FOR INJUNCTIVE RELIEF.

Injunctive relief is an extraordinary and drastic remedy that should be granted only in the rarest of circumstances, which does not exist in this case. *See Reedy v. Borough of Collingswood*, 204 Fed.Appx. 110, 113-14 (3d Cir. 2006).   A plaintiff seeking injunctive relief carries an especially high burden of demonstrating: (i) a clear threat of imminent, irreparable harm; (ii) a likelihood of success on the merits; (iii) that a balancing of hardships weighs in its favor; and, (iv) the relief sought is in the public interest.  *See NutraSweet Co.*, 176 F.3d at 153; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (noting that a preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion").  The failure to establish any one of these elements "renders a preliminary injunction inappropriate." *NutraSweet Co.*, 176 F.3d at 153.

The fact that the Plaintiff asserts claims for alleged violations of its First Amendment rights does not lower the bar for granting injunctive relief.   On the contrary, the Third Circuit has held that even where a Plaintiff sets forth a First Amendment claim, "[e]stablishing a risk of irreparable harm is not enough.  A plaintiff has the burden of proving a clear showing of immediate irreparable injury." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *see also Conchatta, Inc. v. Evanko*, 83 F. App'x 437, 442 (3d Cir. 2003) ("plaintiff must show irreparable harm in order to obtain preliminary injunction" and, even in the First Amendment context, a plaintiff must do more than make an "assertion of First Amendment rights" to satisfy

the irreparable harm standard instead, the plaintiff "must show a chilling effect on free expression").

Further, here, Plaintiff seeks a preliminary injunction that would disturb the *status quo* thereby subjecting Plaintiff's request for a preliminary injunction to an even higher standard. "A primary purpose of a preliminary injunction is maintenance of the status quo." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994) (reversing entry of a preliminary injunction, in part, because the injunction, which compelled issuance of a building permit, fundamentally altered the *status quo*).  The Third Circuit has cautioned that "when the preliminary injunction is directed not merely at preserving the status quo but . . . providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980); *see also United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982) (mandatory injunctions should be used sparingly).  Accordingly, Plaintiff must demonstrate that the facts of this case require such drastic relief.

As set forth below, Plaintiff has failed to meet its burden, and thus Plaintiff is not entitled to the requested extraordinary relief.

### B.  PLAINTIFF CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS.

In order for this Court to grant Plaintiff's application for a preliminary injunction, Plaintiff must demonstrate a likelihood of success on the merits.  To meet this element, Plaintiff must convince the Court that it has "a very clear and strong case" such that there is a "'substantial likelihood' of ultimate success" on its claim; a "mere preponderance, implying a 51% or more-likely-than-not balancing of proofs is insufficient" to establish this element of injunctive relief.  *Gucci Amer., Inc. v. Daffy's, Inc.*, 2000 WL 1720738, at *7-8 (D.N.J. Nov. 14, 2000).  Plaintiff's motion for preliminary injunction must be denied because Plaintiff cannot

660093.1

sustain a claim against any of the named Defendants.  Thus, Plaintiff has zero chance of succeeding on the merits of this case.  As delineated above: (1) Plaintiff's claim against Chief of Police Henry White is duplicative of the claims against the City and must be dismissed; (2) Plaintiff's claim against the Police Department must be dismissed because the Police Department is a City subdivision, not a separate entity, and accordingly Plaintiff's claims against the Police Department are also duplicative; and, (3) Plaintiff cannot establish that the City was the motivating factor behind the alleged constitutional violation and cannot establish any basis for a finding of liability against the City under *Monell*.  Accordingly, Plaintiff's Complaint should be dismissed in its entirety and against all Defendants thereby rendering Plaintiff's motion for preliminary injunction moot.

Likewise, Plaintiff's First Amendment claim is meritless and the instant statute satisfies the four-prong inquiry set forth in *Central Hudson*, as discussed *supra*.  Plaintiff's brief relies heavily on *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), but *Reed* is inapplicable to the case at bar for several reasons, most notably of which, is that *Reed* does not concern commercial speech.  Restrictions on commercial speech are evaluated under *Central Hudson,* and as set forth in Point I above, intermediate scrutiny applies to the instant statute.  As the Third Circuit recently noted *in Free Speech Coal., Inc. v. AG United States*, 825 F.3d 149, 176 (3d Cir. 2016):

> The Court also established years ago that the Constitution "accords a lesser protection" to another distinct form of speech—commercial speech—and has therefore applied intermediate scrutiny to laws affecting this speech. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562–66, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Notably, because the Court in *Reed* never even mentioned *Central Hudson*, at least two district courts in California have concluded that *Reed* does not compel strict scrutiny for laws affecting commercial speech. *See CTIA–The Wireless Assoc. v. City of Berkeley, Cal.*, 139 F.Supp.3d 1048, 1061 (N.D. Cal. 2015) ("The Supreme Court has clearly made a distinction between commercial speech and noncommercial speech, *see, e.g.*, *Central Hudson* ..., and nothing in its recent opinions, including *Reed*, even comes close to suggesting that that well-established distinction is no longer valid."); *Cal. Outdoor Equity Partners v. City of Corona*, No. CV 15-03172, 2015 WL 4163346, at *10

(N.D. Cal. July 9, 2015) ("*Reed* does not concern commercial speech, let alone bans on off-site billboards. The fact that *Reed* has no bearing on this case is abundantly clear from the fact that *Reed* does not even cite *Central Hudson*, let alone apply it."); *see also Citizens for Free Speech, LLC v. Cty. of Alameda*, 114 F.Supp.3d 952, 968–69 (N.D. Cal. 2015) (rejecting plaintiffs' argument that *Reed* governed a regulation that banned commercial speech and applying intermediate scrutiny to that regulation).

Therefore, because this case only involves commercial speech,[4] *Central Hudson* is the governing case, and the instant statute passes constitutional muster.   Accordingly, Plaintiff cannot show a likelihood of success on the merits.

### C.  PLAINTIFF CANNOT DEMONSTRATE A THREAT OF IMMINENT, IRREPARABLE HARM.

Furthermore, this Court should reject Plaintiff's request for a preliminary injunction because Plaintiff cannot demonstrate irreparable harm.  The alleged irreparable harm in this case consists of Plaintiff's inability to notify "customers and potential customers that 'BYOB' beverages are permitted for fear of being prosecuted and of losing the ability to offer 'BYOB' opportunities." (*See* Plaintiff's Motion for Preliminary Injunction P. 11).  This alleged harm does not rise to the level of an immediate, irreparable injury.  This is especially true in light of the fact that *N.J.S.A.* 2C:33-27 was enacted in 1999. *See* L. 1999, c. 90.  L. 1999, c. 90 repealed L. 1977, c. 244 and *N.J.S.A.* 2A:170-25.21-25.23, which means the BYOB advertising prohibition at issue in this case has been law in New Jersey since at least 1977.  Plaintiff has operated its business in Atlantic City for a long time.  Thus, at a minimum, Plaintiff has known and been subject to the challenged statute.  "[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985). "Delay in seeking enforcement of those rights ... tends to indicate at least a reduced need for such drastic, speedy action." *Id*.  Here, Plaintiff has been anything but

---

[4] This point was conceded to in Plaintiff's Complaint. See paragraphs 20-22 which allege violations of Plaintiff commercial free speech rights.

expeditious.  The present version of the statute has been in effect since 1999, and only now has

Plaintiff come forward to assert the urgency of its unconstitutionality.  Courts have chosen not to

grant injunctive relief where parties have taken weeks to seek injunctive relief (*See Citibank,* 756

F.2d at 275-77 (finding that a brief ten-week delay precluded injunctive relief)).  Surely, the

granting of a preliminary injunction is improper in this case, where Plaintiff has taken years.

Moreover, as stated *supra*, "[a] party seeking a mandatory preliminary injunction that

will alter the status quo bears a particularly heavy burden in demonstrating its necessity."

*Acierno*, 40 F.3d at 653 (citing *Punnett*, 621 F.2d at 582).  Here, granting Plaintiff's motion for

preliminary injunction would allow Plaintiff to advertise BYOB in contravention of the statute at

issue thereby giving Plaintiff the same relief it would obtain if it prevailed on the merits.  Such a

result presupposes that the statute violates Plaintiff's First Amendment rights.  Here, the Court

should order that the *status quo* persist because no immediate, irreparable injury will befall

Plaintiff by maintaining the existing state of affairs.  The mere fact that Plaintiff has asserted an

alleged constitutional violation does not require a finding of irreparable harm.  Here, the Plaintiff

can continue to engage in the same commercial activities it has always engaged in, further

obviating Plaintiff's contention that it is being irreparably harmed.  *See American Future*

*Systems, Inc. v. Pennsylvania State University*, 510 F. Supp. 983, 985 (M.D. Pa. 1981) (no

irreparable harm where plaintiff can perform other commercial activities); *Levison v. David*, 106

N.J. Eq. 514, 515 (Ch. 1930) (no irreparable harm because lost profits could be proven and

recovered in a lawsuit).

As the Court noted in *Conchatta, Inc.,* 83 Fed. Appx. at 442:

> While other circuits relax the irreparable harm requirement in First Amendment
> cases, our Court requires a First Amendment plaintiff seeking a preliminary
> injunction to prove irreparable harm. […] [T]he assertion of First Amendment
> rights does not automatically require a finding of irreparable injury. Instead, […]

plaintiff must show a chilling effect on free expression [and] a real or immediate danger to their rights in the near future."

Like the plaintiff in *Conchatta*, here, Plaintiff has failed to demonstrate irreparable harm. Plaintiff has never been cited for violating *N.J.S.A.* 2C:33-27(a)(1); there is no allegation that the City has ever enforced this statute militating against the alleged imminent threat of enforcement; and, there is no evidence that the enforcement of the statute even threatens economic harm. *See id.* at 442-3. Plaintiff's fear of prosecution is entirely of its own making.

### 1.  AN INJUNCTION WILL NOT ISSUE WHERE, AS HERE, THE MOVANT HAS AVAILABLE TO IT AN ADEQUATE REMEDY AT LAW – MONEY DAMAGES.

Plaintiff's Complaint includes a claim for monetary damages to compensate Plaintiff for the alleged loss of its right to present truthful commercial speech. (*See* Plaintiff's Complaint ¶ 23). In order for Plaintiff to prove irreparable harm, it "must demonstrate potential harm that cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (citations omitted). "The requisite feared injury or harm must be irreparable—not merely serious or substantial, and it must be of a peculiar nature, so that compensation in money cannot atone for it." *Republican Party of Pennsylvania v. Cortés*, No. CV 16-05524, 2016 WL 6525409, at *8 (E.D. Pa. Nov. 3, 2016) citing *ECRI,* 809 F.2d at 226; (holding that an injury is "irreparable" only if it cannot be undone through monetary remedies)). Here, a monetary award of the kind Plaintiff seeks and prevailing on the merits of the action would recompense any injury Plaintiff has suffered.

Notably, Plaintiff has brought this action under 42 U.S.C. § 1983. As the Third Circuit pointed out in *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989), "[w]e observe that the standard remedy for violation of 42 U.S.C. § 1983 is compensatory damages. To the extent that Congress

intended that awards under 42 U.S.C. § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages."  The "possibility that adequate compensatory or other corrective relief will be available at a later date in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."   *Sampson v. Murray*, 415 U.S. 61 (1974). Accordingly, Plaintiff's claim for money damages further negates its claims of irreparable harm in this case.

Without irreparable injury, Plaintiff cannot receive the extraordinary relief that it seeks. "[A]n irreparable injury is one that is not remote or speculative, but actual and imminent and for which monetary damages cannot adequately compensate."  *FMC Corp. v. Control Solutions, Inc.*, 369 F.Supp.2d 539, 573 (E.D.Pa.2005) (citations and internal quotations omitted).  Here, Plaintiff relies on the typical claim that it has alleged a constitutional violation, and therefore, there must be irreparable harm.  However, our courts have "repeatedly insisted that the use of judicial power to arrange relationships prior to a full determination on the merits is a weighty matter, and the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm." *Adams v. Freedom Forge*, 204 F.3d 475, 487 (3d Cir. 2000).  Here, Plaintiff has failed to demonstrate irreparable harm, and Plaintiff's motion for preliminary injunction must be denied.

### D.  THE REMAINING FACTORS WEIGH HEAVILY IN DEFENDANTS' FAVOR AND AGAINST THE IMPOSITION OF AN INJUNCTION IN THIS CASE, AND IS THUS NOT IN THE PUBLIC INTEREST.

Plaintiff cannot show that it has been harmed and accordingly the Court need not consider the harm that would result from granting a preliminary injunction.  Nevertheless, the harm to these Defendants, the State of New Jersey, and the public interest—should the injunction

25

be granted—is apparent and real.  First, any time the State or a municipality is enjoined from effectuating statutes that have been lawfully passed by representatives of the people, it suffers irreparable injury. *See Maryland v. King*, 133 S.Ct. 1, 3 (2012).  In addition, an injunction would result in ongoing and concrete harm to New Jersey's law enforcement and public safety interests, respectively.

The balance of equities clearly favors Defendants.  As set forth above, Plaintiff will not suffer irreparable harm even absent the granting of an injunction.  On the other hand, the harm that would befall Defendants and the State of New Jersey upon entry of an injunction is significant.  The granting of the preliminary injunction would allow Plaintiff the ability to advertise its BYOB status in contravention of the compelling state interest in regulating alcohol consumption and promoting temperance.  In addition, granting the preliminary injunction and allowing establishments in the City to advertise their BYOB status would create great confusion regarding the legality of this activity.  *N.J.S.A.* 2C:33-27 applies statewide and lifting the advertising ban only in the City or precluding enforcement of that statute against Plaintiff only would lead to increased litigation against municipalities and the state.  In addition, BYOB establishments would likely view the injunction as a "free pass" for them to engage in unfettered advertising of their BYOB statuses thereby leading to repeated, and frequent, *de facto* violations of the within statute.  State laws must apply uniformly to all individuals and entities that fall under their purview.  Here, Plaintiff is asking this Court to carve out an exception for them that would lead to a disjointed application of the law across the state.  Accordingly, this legal incoherence will cause great damage to the state and is not in the public interest.

In light of the foregoing, this Court must deny Plaintiff's motion for a preliminary injunction.

660093.1

## **CONCLUSION**

For the foregoing reasons, Defendants the City of Atlantic City, the Police Department of the City of Atlantic City and Police Chief Henry White respectfully request that the Court deny Plaintiff's motion for preliminary injunction and grant Defendant's Cross-Motion to Dismiss Plaintiff's Complaint in its entirety, and *with* prejudice.


Dated: May 12, 2017                              **LITE DEPALMA GREENBERG, LLC**

                                                 s/ *Victor A. Afanador*
                                                 Victor A. Afanador, Esq.
                                                 Steven S. Glickman, Esq.
                                                 570 Broad Street, Suite 1201
                                                 Newark, New Jersey 07102
                                                 Tel: (973) 623-3000
                                                 vafanador@litedepalma.com
                                                 sglickman@litedepalma.com
                                                 *Attorneys for Defendants*, the *City of Atlantic City, the Police Department of the City of Atlantic City and Police Chief Henry White*

660093.1