UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GJJM ENTERPRISES, LLC,     :  Hon. Joseph H. Rodriguez
d/b/a STILETTO,

   Plaintiff,       :  Civil Action No. 17-2492

   v.         :    OPINION

CITY OF ATLANTIC CITY, CITY OF  :
ATLANTIC CITY POLICE DEPARTMENT,
HENRY WHITE, Chief, Atlantic City  :
Police Department,  CHRISTOPHER
PORRINO, New Jersey Attorney General,  :
NEW JERSEY DIVISION OF ALCOHOLIC
BEVERAGECONTROL, DAVID P. RIBLE,  :
Director of New Jersey Division of Alcoholic
Beverage Control,       :

   Defendants.     :

   In this lawsuit, Plaintiff GJJM Enterprises, LLC d/b/a Stiletto

("GJJM") challenges the constitutionality of New Jersey's ban on "BYOB"

advertising and has sought declaratory and injunctive relief in asking this

Court to declare N.J. Stat. Ann. § 2C:33-27(a)(2) violative of its First

Amendment rights and to enjoin the government from enforcing the ban.

   This matter is before the Court on (1) a motion to dismiss the

Complaint filed by Defendants City of Atlantic City, City of Atlantic City

Police Department, and Henry White, Chief, Atlantic City Police

Department ("Atlantic City Defendants") [21]; (2) a motion for preliminary

injunction filed by GJJM, [5] in Civil Action No. 17-6879, which has been consolidated under the above-captioned docket number; and (3) a cross-motion to dismiss the Complaint by Defendants New Jersey Division of Alcoholic Beverage Control, Christopher Porrino, and David P. Rible ("State Defendants"), [5] in Civil Action No. 17-6879.

The Court heard oral argument on the motions on October 30, 2017; no testimony was offered beyond affidavits and attached documents. After careful consideration, GJJM's motion for a preliminary injunction will be granted for the reasons and in the form explained below. The following constitutes the Court's findings of fact and conclusions of law upon GJJM's motion, pursuant to Federal Rule of Civil Procedure 52(a).

<u>Background</u>

GJJM operates a nightlife destination called Stiletto ("the Club") adjacent to the Atlantic City boardwalk. The Club features non-alcoholic beverages and live entertainment and frequently hosts tourists, convention groups, and bachelor parties. As a service to its customers, GJJM permits its clientele to bring their own beer and wine ("BYOB") to consume at the Club; it does not allow customers consume liquor or mixed drinks in the Club. (Affidavit of Phillip Griffo, ¶ 3.) GJJM contends that the fear of prosecution under New Jersey's ban on BYOB advertising has prevented it

from notifying its clients–either through radio, print, television, and online ads or by exterior or interior signage–that they are permitted to bring their own beer or wine to the Club.

Presently before the Court is a motion for a preliminary injunction enjoining the State Defendants[1] from taking any actions to enforce the statutory provisions that prohibit establishments from advertising that patrons may bring their own beverages to consume on the premises. Also under consideration are cross-motions by the Defendants to dismiss the Complaint.

<u>New Jersey Law</u>

Section 2C:33-27 of the New Jersey Statutes governs the consumption of alcohol at restaurants that do not have a license to sell alcoholic beverages. It provides, in pertinent part:

> a. No person who owns or operates a restaurant, dining room or other public place where food or liquid refreshments are sold or served to the general public, and for which premises a license or permit authorizing the sale of alcoholic beverages for on-premises consumption has not been issued:
> (1) Shall allow the consumption of alcoholic beverages, other than wine or a malt alcoholic beverage, in a portion of the premises which is open to the public; or

---

[1] After hearing oral argument, the Court previously denied Plaintiff's motion for a preliminary injunction against the Atlantic City Defendants, expressing concern that Plaintiff could not demonstrate a likelihood of success on the merits against them when dealing with a State-wide statute absent involvement of the State in the case.

(2) Shall charge any admission fee or cover, corkage or service charge or advertise inside or outside of such premises that patrons may bring and consume their own wine or malt alcoholic beverages in a portion of the premises which is open to the public.

(3) Shall allow the consumption of wine or malt alcoholic beverages at times or by persons to whom the service or consumption or alcoholic beverages on licensed premises is prohibited by State or municipal law or regulation.

\*      \*      \*

c. A person who violates any provision of this act is a disorderly person, and the court, in addition to the sentence imposed for the disorderly person violation, may by its judgment bar the owner or operator from allowing consumption of wine or malt alcoholic beverages in his premises as authorized by this act.

N.J. Stat. Ann. § 2C:33-27.

Thus, under the statute, patrons may bring their own beer and wine to the restaurant, but may not bring outside liquor. 2C:33-27(a)(1). The restaurant may not, however, advertise–either inside or outside the establishment–that patrons are permitted to bring their own alcoholic beverages. 2C:33-27 (a)(2). As a result, restaurants are prohibited from notifying customers that their establishments are BYOB, even though it is lawful for patrons to bring and consume their beer or wine on the premises. Individuals who advertise that customers may BYOB to their restaurants face prosecution as disorderly persons. 2C:33-27(c).  In addition, courts may also prohibit individuals who violate the advertising ban from permitting the consumption of BYOB beverages at their restaurants. Id.

4

<u>Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[2] <u>See</u> <u>Chester County Intermediate Unit v. Pennsylvania Blue Shield</u>, 896 F.2d 808, 812 (3d Cir. 1990). The question before the Court is not whether the plaintiff ultimately will prevail. <u>Watson v. Abington Twp.</u>, 478 F.3d 144, 150 (3d Cir. 2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

---

[2]"Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." <u>U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

"A claim has facial plausibility[3] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that

---

[3]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred.  "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Twombly, 550 U.S. at 557.

are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a

plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of a

cause of action's elements will not do." <u>Twombly</u>, 550 U.S. at 555 (internal

citations omitted). <u>See also</u> <u>Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements,

do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's

factual allegations are "enough to raise a right to relief above the

speculative level on the assumption that all of the complaint's allegations

are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 556 (internal

citations omitted). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has

alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" <u>Iqbal</u>,

556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

<u>Nature of the Claim</u>

GJJM's Constitutional claim is governed by Title 42 U.S.C. § 1983,

which provides a civil remedy against any person who, under color of state

law, deprives another of rights protected by the United States Constitution.

See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the

Constitution or the laws of the United States" and (2) that plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. Amend. I. As such, a government, including a municipal government vested with State authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed v. Town of Gilbert, Ariz., --- U.S. ---, 135 S. Ct. 2218, 2226 (2015).

The Eleventh Amendment to the Constitution guarantees the states immunity from certain claims: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. As such, the Eleventh Amendment has long been held to incorporate a more

general principle of sovereign immunity that bars citizens from bringing suits for damages against any state in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984). Monetary claims for deprivations of civil rights are subject to the sovereign immunity bar, as the United States Supreme Court has held that "neither a State nor its officials acting under their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). As such, an employee of the State named as a defendant in a civil rights action may be held liable for damages only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity. See Hafer v. Melo, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983"). "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will, 491 U.S. at 71 n.10.

A municipality is not liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. Monell v. Department of Soc. Servs. of New York, 436 U.S. 658, 691 (1978). However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of a plaintiff's

rights. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

Police departments cannot be sued in conjunction with municipalities because police departments are administrative arms of municipalities, not separate entities. Adams v. City of Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006); Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997) (holding police department and municipality same for § 1983); N.J. Stat. Ann. § 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government").

Defendants' motions

As an initial matter, the Court notes that GJJM does not object to dismissal of its request for monetary damages. [Civil Action No. 17-6879, Doc. 14.] Regarding the remaining claim for prospective injunctive relief, the Court finds it has been pled sufficiently.

In briefing, GJJM voluntarily dismissed the claims against the Atlantic City Police Department and its Chief of Police as duplicative of

those against the City. [Doc. 22.] As to Atlantic City, GJJM has failed to allege the existence of any official policies or customs that may cause or have caused a constitutional violation. See, e.g., McTernan v. City of York, Pa., 564 F.3d 636 (3d Cir. 2009) ("[A plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."). The Amended Complaint does not identify conduct of a municipal decisionmaker or specify a custom or policy of Atlantic City that could form the basis for municipal liability. To the contrary, the record indicates that Atlantic City has not sought to enforce the State statute at issue. GJJM's conclusory allegations therefore are unsupported by any facts alleged and insufficient to state a plausible Monell claim. Accordingly, the City Defendants' motion to dismiss the Amended Complaint will be granted.

Next, the New Jersey Division of Alcoholic Beverage Control ("NJABC") and its Director argue that they are not proper defendants because they have no role in enforcing N.J. Stat. Ann. § 2C:33-27. The State acknowledges "[t]he New Jersey Legislature has delegated authority over the manufacture, sale, and distribution of alcoholic beverages in the State to the ABC and has authorized the Director of the ABC, David Rible, to enforce the State's rules and regulations related to alcohol. See N.J. Stat. Ann. § 33:1–3." [17-6879, Doc. 11.] The State's ABC Handbook indicates:

12

> Under no circumstances may any "B.Y.O.B." (Bring Your Own Bottle) be advertised in any fashion by an unlicensed restaurant or other public place where food or beverages are sold to the general public. A person who is found guilty of violating this prohibition is considered a disorderly person. By definition (N.J.S.A. 2C:33-27), B.Y.O.B. prohibits sales of alcohol and relates to unlicensed premises. Accordingly, questions relating to B.Y.O.B. are generally not within the purview of the ABC and should be directed to appropriate local law enforcement officials.
>
> \*      \*      \*
>
> Since the statute (N.J.S.A. 2C:33-27) applies to non-licensed premises, violations should be reported to the police department of the municipality in which the offending restaurant is located.

Alcoholic Beverage Control Handbook at 12, available at

http://www.nj.gov/oag/abc/downloads/abchandbook02.pdf (last visited

on December 20, 2017). Accordingly, the State argues that local police

departments are the enforcers of the BYOB advertising statute at issue.

During oral argument on the instant motions, the State represented

that *under NJABC regulations*, an entity could not include religious

symbolism or a statement about curative or therapeutic effects on an

advertisement for happy hour specials. "That's not permitted when you're

advertising for alcohol in the State of New Jersey, that's all under the ABC

regulations" for licensed and regulated entities. (Tr. 29:7-15.) Considering

the current record before it, the Court is not inclined to dismiss NJABC or

Rible as having no responsibility with respect to the regulation of alcohol.

<u>Preliminary Injunction Standard</u>

A preliminary injunction "is an extraordinary remedy . . . which should be granted only in limited circumstances." <u>American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.</u>, 42 F.3d 1421, 1427 (3d Cir. 1994) (citation omitted). A preliminary injunction "should not be granted unless the movant, <u>by a clear showing</u>, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (per curiam) (internal quotations omitted; emphasis in original). "[T]he requirement for substantial proof" is higher for "a plaintiff's motion for preliminary injunctive relief" than it is for a "defendant's motion for summary judgment[,]" where "one would demand *some* evidence . . . in order to avoid a nonsuit." <u>Id.</u> (emphasis in original); <u>see also</u> <u>Schuchardt v. President of the U.S.</u>, 839 F.3d 336, 351 (3d Cir. 2016) (citing <u>Obama v. Klayman</u>, 800 F.3d 559, 568 (D.C. Cir. 2015) for proposition that "summary judgment imposes a lighter burden than the 'substantial likelihood of success' necessary to obtain a preliminary injunction").

To prevail on a motion for preliminary injunctive relief, the moving party must show as a prerequisite:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured … if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction,

> should take into account, when they are relevant, (3) the
> possibility of harm to other interested persons from the
> grant or denial of the injunction, and (4) the public interest.

Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017)

(quoting Del. River Port Auth. v. Transamerican Trailer Transport, Inc., 501

F.2d 917, 919-20 (3d Cir. 1974) (further internal citations omitted)). "[A]

district court—in its sound discretion—should balance th[e]se four factors

so long as the party seeking the injunction meets the threshold on the first

two." Reilly, 858 F.3d at 176.

Reasonable probability of success

In order to meet the threshold to establish the first factor, the moving

party "must demonstrate that it can win on the merits (which requires a

showing significantly better than negligible but not necessarily more likely

than not)." Reilly, 858 F.3d at 179. However, "more than a mere possibility

of relief is required" to make the required showing; the moving party must

show "a reasonable probability of eventual success." Id. at 179 n.3 (internal

quotations omitted).

New Jersey's statutory ban on BYOB advertising places a content-

based restriction on speech that fails strict scrutiny because it is not

supported by a compelling government interest nor is it the least restrictive

means of achieving the government's stated purpose. As stated above,

"[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed, 135 S. Ct. at 2226 (citing R.A.V. v. St. Paul, 505 U.S. 377, 395 (1992)). "Commercial speech is no exception." Sorrell v. IMS Health, Inc., 564 U.S. 552, 566 (2011) (where Supreme Court applied heightened "strict scrutiny" standard to cases of commercial speech). In Reed, the Supreme Court struck down a sign ordinance which included various exceptions and variable standards depending on whether the sign was political, elections-oriented, or bore some other non-commercial message. The Court found that the ordinance was content-based "because of the topic discussed or the idea or message expressed" and therefore subject to strict scrutiny. 135 S. Ct. at 2227.

The Court previously held that "when a State entirely prohibits the dissemination of truthful, nonmisleading commercial messages for reasons unrelated to the preservation of a fair bargaining process," its law would be subject to "rigorous review." 44 Liquor Mart, Inc. v. Rhode Island, 517 U.S. 484, 501 (1996) (finding unconstitutional a statutory prohibition against advertisements that provided the public with accurate information about retail prices of alcoholic beverages). In that case, the Court struck down a

Rhode Island statute that prohibited "'advertising in any manner whatsoever' the price of any alcoholic beverage offered for sale in the State; the only exception [was] for price tags or signs displayed with the merchandise within licensed premises and not visible from the street." Id. at 489. In justifying the implementation of strict scrutiny for content-based bans, the Court stated, "[o]ur commercial speech cases have recognized the dangers that attend governmental attempts to single out certain messages for suppression." Id. at 501. "[T]hey all but foreclose alternative means of disseminating certain information." Id.

    As in Reed, the BYOB advertising ban in this case "'on its face' draws distinctions based on the message the speaker conveys." Reed, 135 S. Ct. at 2227 (citing Sorrell, 564 U.S. 564-66). It is therefore presumptively unconstitutional and subject to strict scrutiny. Further, as admonished in 44 Liquormart, the ban in this case "fail[s] to leave open 'satisfactory' alternative channels of communication." 44 Liquormart, 517 U.S. at 502 (citations omitted). Rather, it provides a complete ban on truthful, nonmisleading commercial speech about a lawful product.

    The State Defendants have presented no compelling government interest for banning BYOB advertising, yet permitting liquor stores and restaurants with liquor licenses to advertise on-site alcohol sales. Citing the

Twenty-first Amendment, the State argues that it has a strong interest in regulating alcoholic beverages to protect the health, safety, and welfare of the people of the State through the promotion of temperance. The Supreme Court has made clear, however, specifically with respect to the advertisement of alcoholic beverages, that banning speech is different from and more intrusive than banning conduct. See 44 Liquormart, 517 U.S. at 511-12 ("it is no answer that commercial speech concerns products and services that the government may freely regulate"). See also Players Int'l, Inc. v. United States, 988 F. Supp. 497 (D.N.J. 1997) (distinguishing government's ability to regulate activities from constraints on speech regarding the activity).

Alternatively, even if the BYOB advertising ban is merely considered commercial speech, defined as "expression related solely to economic interests of the speaker and its audience," Central Hudson Gas & Elec. v. Public Serv. Comm'n, 447 U.S. 557 (1980), it fails intermediate scrutiny.[4] Under the Central Hudson test, a court first inquires whether the commercial speech at issue concerns a lawful activity and is not misleading; if not, it is without First Amendment protection entirely. Central Hudson,

---

[4] Notably, however, the Supreme Court has applied the heightened strict scrutiny standard to cases of commercial speech. See Sorrell, 564 U.S. 552.

447 U.S. at 566. The remainder of the test allows the government to regulate nonmisleading commercial speech concerning a lawful activity where: it asserts a substantial interest in regulating the speech; the regulation directly advances the governmental interest asserted; and the regulation is not more extensive than necessary to serve that interest. Id.

In Central Hudson, a state public utility commission completely banned promotional advertising by an electric utility. The Supreme Court determined that the expression regulated was commercial speech that should enjoy First Amendment protection to protect the fact that it informed society, as the utility company's message promoting the use of electricity was not misleading or illegal. Additionally, the government had a substantial interest in conserving energy and preserving a fair rate structure and the ban on promotional advertising directly advanced those interests. However, the complete ban was not narrowly tailored to address the impact of whether the promotional advertising at issue had any impact on the government's interest in energy conservation. Id.

Subsequently, a unanimous Supreme Court ruled that a federal law prohibiting the disclosure of the alcohol content of beer on labels failed the Central Hudson test's requirement that the regulation directly advance the government interest. Rubin v. Coors Brewing Co., 514 U.S. 476 (1995).

19

While federal law prohibited the disclosure of alcohol content on labels unless required by state law, disclosure of alcohol content in advertising applied only in 18 states that affirmatively prohibited it. As such, producers were permitted to disclose alcohol content in advertising in much of the country, presumably advancing competition for business based on higher alcohol content. The Court determined that curbing the advertising of alcohol content of beers would be a better way of coping with strength wars than regulating labels, so the regulation at issue did not directly advance the governmental interest asserted. Further, the Court determined that the federal law prohibiting disclosing alcohol strength on labels was not sufficiently narrowly tailored to the government's goal; that is, the government could directly limit the alcohol content of beer instead. Id.

New Jersey's ban on BYOB advertising raises similar concerns. Indeed, in writing for the plurality in 44 Liquormart, Justice Stevens cautioned that the Central Hudson test should be applied with "special care," as blanket bans on commercial speech have historically been disfavored by the Court and, when unrelated to consumer protection, rarely survive constitutional review. 517 U.S. at 500, 504. Allowing BYOB advertising concerns a lawful activity and would not be misleading. The State, however, has neither asserted a substantial interest in regulating the

speech at issue, nor shown that the regulation directly advances the governmental interest asserted and is not more extensive than necessary to serve that interest.

Irreparable harm

To satisfy the second factor, the moving party "must demonstrate . . . the probability of irreparable harm if relief is not granted." Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988) (internal quotations omitted). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).

The moving party must demonstrate that it is likely to suffer "actual or imminent harm which cannot otherwise be compensated by money damages," or it "fail[s] to sustain its substantial burden of showing irreparable harm." Frank's GMC, 847 F.2d at 103; see also Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an

injunction.") (Emphasis in original). In short, "a movant for preliminary equitable relief must . . . demonstrate . . . that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." <u>Reilly</u>, 858 F.3d at 179 (footnote omitted).

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976). For that irreparable injury to support granting a preliminary injunction, plaintiffs must show "a chilling effect on free expression." <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 487 (1965). <u>Accord</u> <u>Hohe v. Casey</u>, 868 F.2d 69, 72-73 (3d Cir. 1989) (noting that "the assertion of First Amendment rights does not automatically require a finding of irreparable injury," rather, "plaintiff[ ] must show 'a chilling effect on free expression.'")

As stated above, damages are not available as an alternative in this case. In addition, GJJM has noted the chilling effect that the statutory BYOB advertising ban has had in that it has chosen to censor its constitutionally protected speech to avoid arrest. Defendants point out that GJJM has been incorporated since 2009, at which time the BYOB advertising ban had been in place, so a preliminary injunction should be denied for failing to meet the requirement of immediate irreparable harm.

However, where probable success on the merits of a constitutional claim is shown, and such violation will continue unless enjoined, the continuing constitutional violation can constitute irreparable harm. Stilp v. Contino, 613 F.3d 405, 409 (3d Cir. 2010) (noting that First Amendment violation satisfies irreparable injury requirement).

Balance of harms

The third factor requires the court to "balance the parties' relative harms; that is, the potential injury to the plaintiffs without this injunction versus the potential injury to the defendant with it in place." Issa v. School Dist. of Lancaster, 847 F.3d 121, 143 (3d Cir. 2017). At this stage, a court should also take into account "the possibility of harm to other interested persons from the grant or denial of the injunction." Reilly, 858 F.3d at 176 (quoting Del. River Port Auth., 501 F.2d at 920 (further citations omitted)). "[W]hen considerable injury will result from either the grant or denial of a preliminary injunction, these factors to some extent cancel each other[.]" Del. River Port Auth., 501 F.2d at 924. The assertion of serious First Amendment questions has been held to compel a finding that the balance of hardships tips sharply in the plaintiff's favor. American Bev. Ass'n v. San Francisco, 871 F.3d 884, 898 (9th Cir. 2017). (quotation omitted).

The Court finds that balancing the parties' harms in this case favors granting an injunction.

<u>Public interest</u>

Finally, the Supreme Court has noted that "parts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." <u>Instant Air Freight</u>, 882 F.2d at 803 (quoting <u>Virginian Ry. Co. v. System Fed'n No. 40</u>, 300 U.S. 515, 552 (1937)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312 (1982). While weighing whether the public interest favors a preliminary injunction "is often fairly routine," <u>Issa</u>, 847 F.3d at 143 (internal quotations omitted), "'where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff.'" <u>Weinberger</u>, 456 U.S. at 312-13 (quoting <u>Yakus v. United States</u>, 321 U.S. 414, 440 (1944)).

When there are no societal benefits justifying the suppression of First Amendment rights, the public interest is in favor of granting an injunction. Tenafly Eruv Assoc., Inc. v. Borough of Tenafly, 309 F.3d 144, 177 (3d Cir. 2002). Further, there is a public interest in preventing the hindrance of consumer choice as well as impediments to debate over issues of public policy. See, e.g., 44 Liquormart, 517 U.S. at 495-97, 503 (describing history and importance of advertising in United States; "the same interest that supports regulation of potentially misleading advertising, namely, the public's interest in receiving accurate commercial information, also supports an interpretation of the First Amendment that provides constitutional protection for the dissemination of accurate and nonmisleading commercial messages"); Pacific Gas & Elec. Co. v. Pub. Utilities Comm'n of California, 475 U.S. 1, 8 (1986) ("By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information."); Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 765 (1976) ("It is a matter of public interest that [commercial] decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable.").

The BYOB advertising ban here implicates the rights of consumers to obtain truthful advertising to make informed decisions regarding businesses and services.

## Conclusion

Here, the status quo has not only been non-enforcement, but also has been no BYOB advertising by GJJM. Thus, maintaining the status quo in this case requires that the parties continue to act as they have, namely, the Defendants will not enforce and GJJM will not advertise before an adjudication on the merits can be made as to whether the statute is unconstitutional.

In summary, the motion to dismiss the Complaint filed by Defendants City of Atlantic City, City of Atlantic City Police Department, and Henry White, Chief, Atlantic City Police Department [21] will be granted. The motion for preliminary injunction filed by GJJM, [5] in Civil Action No. 17-6879, will be granted in the form discussed above, and the cross-motion to dismiss the Complaint by Defendants New Jersey Division of Alcoholic Beverage Control, Christopher Porrino, and David P. Rible, [5] in Civil Action No. 17-6879, will be denied. An appropriate Order will issue.

Dated: December 21, 2017     /s/ Joseph H. Rodriguez
             JOSEPH H. RODRIGUEZ
               U.S.D.J.